Matthew Righetti, Esq. (SBN. 121012)
matt@righettilaw.com
**RIGHETTI GLUGOSKI, P.C.**
220 Halleck Street, Suite 220
San Francisco, CA 94129
Telephone: (415) 983-0900

Reuben D. Nathan (SBN. 208436)
rnathan@nathanlawpractice.com
**NATHAN & ASSOCIATES, APC**
2901 West Pacific Coast Hwy, Suite 200
Newport Beach, California 92663
Tel: (949) 270-2798
Fax: (949) 209-0303

Attorneys for Plaintiff MICHELE FOON

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHELE FOON, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CENTENE MANAGEMENT COMPANY, LLC, CENTENE CORPORATION, CENPATICO BEHAVIORAL HEALTH, LLC, ENVOLVE HOLDINGS, INC., NEBRASKA TOTAL CARE, INC., and DOES 1 to 10, inclusive,<br><br>Defendants. | **Case Number:  2:19-cv-01420-AC**<br><br>Magistrate Judge Allison Claire<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Hearing Date:   January 18, 2023**<br>**Time:               10:00 a.m.**<br>**Location:         Ctrm. 26, 8ᵗʰ Floor**<br><br>[Filed concurrently with the Declaration of Declaration of Matthew Righetti; Declaration o Reuben Nathan; and Proposed Order]<br><br>[Complaint filed: June 20, 2019] |

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 18, 2023 at 10:00 a.m. in Courtroom 26 of the above-captioned court located at 501 I Street, Sacramento, CA 95814, Plaintiff MICHELE FOON will, and hereby does, move for an order:

1. Granting preliminary approval of the proposed Joint Stipulation of Class Action Settlement;
2. Appointing Plaintiff as the Class Representative;
3. Appointing Plaintiff's counsel as Class Counsel;
4. Appointing ILYM Group, Inc. as the Settlement Administrator;
5. Approving the form of notice to the Class and Notice Procedures;
6. Setting the hearing date for a Motion for Final Approval.

This motion is made on the ground that the settlement is fair, reasonable, and adequate because it is the product of arm's-length, good-faith negotiations after significant litigation, and given the relative strengths and weaknesses of the claims and defenses, as well as the risks involved in pursuing further litigation. This motion will be based upon this Notice, the accompanying Memorandum of Points and Authorities, Declaration of Matthew Righetti, Declaration of Reuben D. Nathan, as well as the pleadings and papers on file herein and upon any other matters that may be presented to the Court at the hearing.

Dated: December 1, 2022                    Respectfully Submitted,

                                           **RIGHETTI GLUGOSKI, P.C.**

                                           _____
                                           Matthew Righetti

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND ............................................... 1

   A.  The Parties and Plaintiff's Allegations........................................ 1

   B.  Relevant Procedural History ......................................................... 2

   C.  Discovery and Investigation.......................................................... 3

   D.  Settlement Negotiations ................................................................ 3

III.  SUMMMARY OF SETTLEMENT TERMS ........................................... 5

   A.  The Proposed Settlement Class .................................................... 5

   B.  Relief Provided by the Settlement Agreement ............................ 5

      1.  Settlement Allocation Formula .......................................... 5

      2.  No Reversion and No Claim Form Required ..................... 5

      3.  Distribution of Uncashed Settlement Checks.................... 6

      4.  Scope of the Release .......................................................... 6

   C.  Attorneys' Fees and Costs and Proposed Service Payments....... 6

   D.  Settlement Administration............................................................. 7

IV.  ARGUMENT ............................................................................................ 7

   A.  The Settlement Class Should Be Provisionally Certified........... 7

      1.  The Settlement Class Is Sufficiently Numerous ............... 8

      2.  There Are Common Issues of Law and Fact..................... 8

      3.  Plaintiff's Claims Are Typical of the Settlement Class ............... 8

      4.  Adequately Representation ................................................ 9

      5.  Common Issues Predominate Over Individualized Issues .......... 9

      6.  A Class Action Is Superior to Individual Actions..................... 10

      7.  The Court Should Appoint Plaintiff as the Class Representative and Plaintiff's Counsel as Class Counsel............ 10

   B.  The Settlement Should Be Preliminarily Approved.................... 11

      1.  The Settlement Was Negotiated at Arm's Length by Experienced Counsel After Extensive Discovery ........................... 11

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

2. The Settlement Provides Excellent Relief for the Class ............................ 12

3. The Settlement Is Non-Reversionary and Checks Will Be Mailed Automatically ......................................................................................... 14

4. There Is No Unfair Preferential Treatment of Class Members .................. 14

5. The Proposed Attorneys' Fee Award is Preliminarily Appropriate ........... 15

6. The Release Is Narrowly Tailored ............................................................. 15

7. The Proposed Class Notice, Notice Plan, and Settlement Administrator Are Sufficient .................................................................... 16

V. PROPOSED IMPLEMENTATION SCHEDULE ............................................. 18

VI. CONCLUSION ................................................................................................ 19

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

### Cases

*Amchem Prods., Inc. v. Windsor*,

   521 U.S. 591, 620 (1997) ............................................................................................. 7

*Arias v. Superior Court*,

   46 Cal. 4th 969 (2009)................................................................................................. 6

*Bellinghausen v. Tractor Supply Co.*,

   306 F.R.D. 245, 266-267 (N.D. Cal. 2015) ............................................................. 14

*Carlin v. DairyAmerica, Inc.*,

   328 F.R.D. 393, 398-399 (E.D. Cal. 2018) .............................................................. 7

*Chu v. Wells Fargo Investments, LLC*,

   2011 WL 672645 at *5 (N.D. Cal. Feb. 16, 2011)................................................... 15

*Class Plaintiffs v. City of Seattle*,

   955 F.2d 1268, 1276 (9th Cir. 1992) ....................................................................... 11

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011, 1020 (9th Cir. 1998) .............................................................. 9, 10, 11

*Hanon v. Dataproducts Corp.*,

   976 F.2d 497, 508 (9th Cir. 1992)............................................................................. 8

*In re Bluetooth Headset Prods. Liab. Litig.*,

   654 F.3d 935, 946 (9th Cir. 2011)........................................................................ 7, 12

*In re Hyundai and Kia Fuel Economy Litigation*,

   926 F.3d 539, 557-558 (C.A.9 (Cal.), 2019) ............................................................ 7

*In re Tableware Antitrust Litig.*,

   484 F. Supp. 2d 1078, 1079-1080 (N.D. Cal. 2007) ............................................... 11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

   688 F.2d 615, 625 (9th Cir. 1982) ........................................................................... 11

*Rannis v. Racchia*,

   380 Fed. Appx. 646, 651 (9th Cir. 2010) .................................................................. 8

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

*Rodriguez v. West Publishing Corp.*,

   563 F.3d 948, 962-963 (9th Cir. 2009) ........................................................ 16

*Silber v. Mabon*,

   18 F.3d 1449, 1454 (9th Cir. 1994)............................................................... 16

*Stonehocker v. Kindred Healthcare Operating LLC*,

   2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) .............................................. 8

*Tyson Foods, Inc. v. Bouaphakeo*,

   577 U.S. 442, 453 (2016) ............................................................................. 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,

   617 F.3d 1168, 1172 (9th Cir. 2010)............................................................. 8

<u>Rules</u>

Fed. R. Civ. P. 23 ............................................................................................... 1

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 8

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 9

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 9

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................ 7

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 16

Fed. R. Civ. P. 23(e) .................................................................................... 11, 16

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................... 16

Fed. R. Civ. P. 23(g)( 1)(A) .............................................................................. 10

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Plaintiff MICHELE FOON ("Plaintiff") and ("Defendants" or "Centene") have reached a proposed settlement that resolves this putative wage-and-hour class action and PAGA action. Plaintiff seeks preliminary approval of this settlement pursuant to Federal Rule of Civil Procedure 23 and the PAGA.

The proposed Settlement provides an average payment of approximately $6,000.00 per class member for the exempt sub-class group (50 individuals) and $9,375.00 per class member for the non-exempt sub-class group (48 individuals).  The Settlement will also provide a payment of $28,125.00 to the California Labor and Workforce Development Agency (i.e., 75% of the amount allocated to resolve the PAGA allegations). Defendants have also brought their practices into compliance with California law as of March 2020.  This is an excellent result.  If approved, the Settlement will fully resolve the lawsuit. As set forth below, the settlement is fair, reasonable, and adequate, and Plaintiff respectfully requests that the Court grant preliminary approval.

**II.     RELEVANT FACTUAL BACKGROUND**

**A.     The Parties and Plaintiff's Allegations**

Defendant Centene Corporation ("Centene") is a publicly traded managed healthcare organization. Centene Management Company, LLC ("Centene Management") is a subsidiary of Centene that provides administrative services to companies under the Centene umbrella and has been listed as the employer on Plaintiff's wage statements. *Id*. In June 2014, Plaintiff was employed by Cenpatico Behavioral Health, LLC ("Cenpatico") and at that time Plaintiff was classified as an exempt employee. Shortly after, Plaintiff was transferred to work for Envolve Pharmacy Solutions, Inc. (a subsidiary of Centene), which was rebranded as Nebraska Total Care, Inc. from approximately June 2016 through September 2019. *Id*. In or about June 2018, Plaintiff was reclassified as a non-exempt employee, but her job duties and responsibilities did not change. Also in 2018, Plaintiff began working from home until the end of her employment in 2019. Declaration of Matthew Righetti ("Righetti Decl.") ¶ 6; FAC ¶¶ 6-21.

The operative First Amended Complaint ("FAC") alleges that, for both exempt and non-

exempt employees who were expected to work from home, Defendants failed to reimburse business expense; also, for non-exempt employees the FAC alleges that Defendants failed to pay all wages earned, provide compliant meal and rest breaks and timely pay wages. Righetti Decl. ¶ 8, FAC ¶¶16-29.  The Labor Code Section 2802 allegation, applicable to the entire class, claims that both exempt and non-exempt employees were not reimbursed for the costs of using their own personal telephones, computers, office space and utilities while working remotely for Defendants. The home office expenses were approximately $235 to $300 per month. Righetti Decl. ¶¶ 9. The higher cost of $300 a month for home office expenses resulted from living in cities such as Los Angeles, Orange County, San Diego, and San Francisco.

The California Class includes California employees (non-exempt and exempt) who worked from home between June 20, 2015 to July 12, 2021.  Due to the shorter one-year statute of limitations on PAGA, the PAGA group includes California employees (non-exempt and exempt) who worked from home between April 18, 2018 and July 15, 2021.  Stipulated Settlement, pp. 1:19-22 and 4:23-27.  The release extends to December 31, 2021.

## B.    Relevant Procedural History

On April 11, 2019 and June 4, 2019, Plaintiff provided written notices to the LWDA and Defendant of the specific provisions of the Labor Codes she contends were violated, and the theories supporting her contentions. Righetti Decl. ¶ 10. On June 20, 2019, Plaintiff filed a class action complaint in the San Joaquin Superior Court.  Righetti Decl. ¶ 11.  On July 29, 2019, Defendant Centene Management Company LLC removed the Foon Action to the U.S. District Court, Eastern District of California (Dkt. 1). On September 2, 2019, Defendant Centene Management Company LLC filed a Motion to Dismiss Plaintiff's Complaint (Dkt. 19).  On October 3, 2019, Plaintiff filed an Opposition to Defendant Motion to Dismiss (Dkt. 22).  On October 10, 2019, Defendant filed a Reply to Plaintiff's Opposition (Dkt. 23).  On May 5, 2020, the Court issued its Memorandum and Order granting Defendant Centene Management Company LLC's Motion to Dismiss with leave to amend (Dkt. 24).  On May 25, 2020, Plaintiff filed the First Amended Complaint (Dkt. 25). On August 3, 2020, Defendants filed an Answer to Plaintiff's FAC.  (Dkt. 34).

In November 2020, Defendants notified Plaintiff of another pending wage and hour class

action lawsuit against Defendants pending in the Northern District of California entitled *Del Toro v. Centene Corporation, et al.*, Case No. 4:19-cv-05163-YGR. Counsel in *Foon* and *Del Toro* agreed to cooperate in a joint prosecution of the cases.

### C. Discovery and Investigation

On August 5, 2020, Plaintiff served Special Interrogatories on each Defendant and on August 6, 2020, Plaintiff also served Requests for Production of Documents on Defendants. Righetti Decl. ¶ 12. Plaintiff's discovery sought the putative class members' names and contact information; Plaintiff's employment records; policy documents relating to the wage and hour claims; the putative class members' time and payroll records; and other documents relevant to the class certification analysis, such as documents reflecting communications between Defendants and the putative class members on relevant topics. *Id.* On August 10, 2021, Plaintiff noticed the deposition of Defendant's 30(b)(6) witness(es) regarding topics relating to the joint employer issues and wage-and-hour policy issues. Righetti Decl. ¶ 12. During this time Defendants changed counsel from Greenburg Taurig to Littler Mendelson. Righetti Decl. ¶ 13.

Defendants produced 1,800 pages of documents in advance of the mediation relevant to both the LC 2802 claim applicable to the entire class and the wage/meal/rest claims applicable to the non-exempt employees. The records produced included (a) records of time worked, payroll and personnel/employee information, (b) several versions of the employee handbook, (c) wage-and-hour policies relating to timekeeping, scheduling, overtime, rest breaks, and unreimbursed expenses, and (d) documents relating to the timekeeping and the attendance system. Righetti Decl. ¶ 15. Defendants also produced spreadsheets with the names and contact information for 98 putative class members, as well as their job titles, work locations, and dates of employment. Righetti Decl. ¶ 16. The disclosures also included Excel spreadsheets containing time and payroll data for the 98 putative class members from 2015 through 2021. *Id.* ¶ 15. Plaintiff's counsel – and their retained expert -- analyzed the available information and documents to both prepare a damages/penalty analysis and to evaluate the strength of each claim. Righetti Decl. ¶ 17.

### D. Settlement Negotiations

Plaintiff's investigation and discovery enabled Plaintiff and her expert to fairly estimate

Defendants' exposure and the probability of prevailing on each claim at class certification and trial. Plaintiff was thus able to enter settlement negotiations with the information necessary to evaluate both the merits and damage/penalty exposure issues. Righetti Decl. ¶ 18.

On May 21, 2021, the parties in *Foon* and *Del Toro* participated in a full-day mediation with the Honorable Jay C. Gandhi (Ret.), a well-respected mediator who is very knowledgeable and experienced in wage-and-hour class actions. After a full day of negotiation, the parties were able to reach a tentative settlement of $750,000 for the *Foon* case and $2,100,000 for the *Del Toro* case. Righetti Decl. ¶ 19.[1] Thereafter, the parties in *Foon* negotiated the terms of the Memorandum of Understanding, Joint Stipulation of Class Action Settlement ("Joint Stipulation"), and the notice packet. *Id*. ¶ 19. These negotiations lasted for several months and the parties encountered numerous challenges in reaching agreement as to the terms of the settlement, the allocations and the language of the notice packet. A true and correct copy of the Joint Stipulation, including a First Amendment, is attached as Exhibits A and B, respectively to the Declaration of Matthew Righetti. *Id*. The notice packet, which consists of a Notice of Class Action Settlement and an Opt-Out Form, is attached as Exhibits C and D, respectively to the Declaration of Matthew Righetti. *Id*.

There were risks and uncertainties in this case. The joint employer issue was complex and would have been heavily litigated with no guarantee that Plaintiff would be able to prove that all Defendants employed Plaintiff and the Class Members. Also, class certification is a discretionary decision and, by its nature, there is always a risk that certification will be denied. Plaintiff believed it would have been straightforward to certify the LC Section 2802 claim for reimbursement of expenses for home office, internet usage, and associated home office costs. However, other alleged wage and hour claims for the non-exempt subclass would likely have been more challenging to certify since the payroll records and wage statements on their face appear accurate reflecting when employees logged out of the system. Further, many of the rest and meal break policies appeared to be facially compliant, which presented class wide proof challenges. Even if Plaintiff succeeded in certifying some or all of the alleged claims, there was no guarantee that Plaintiff would both win on

---

[1] On October 7, 2022, the Hon. Yvonne Gonzalez Rogers issued an order granting preliminary approval of the Del Toro settlement. *Del Toro* Dkt. No. 97.

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  the merits and survive post-trial motions or appeals – which would have required involved higher

2  litigation costs and expenses to the Class.  Righetti Decl. ¶ 21.

3  **III.    SUMMMARY OF SETTLEMENT TERMS**

4      **A.    The Proposed Settlement Class**

5      The Settlement Class to be conditionally certified consists of 98 California-based employees

6  employed between June 20, 2015 and July 15, 2021 ("Class Period"), sub-classed as follows: (1) 48

7  non-exempt remote employees who worked from home; and (2) 50 exempt remote employees who

8  worked from home (the "Class Members"). Righetti Decl. ¶ 22, Ex. A (Settlement Agreement §

9  D.1).[2]  The PAGA Period is from April 18, 2018 to July 15, 2021

10      **B.    Relief Provided by the Settlement Agreement**

11      The Total Settlement Amount is $750,000.00, which will be used to (a) compensate Class

12  Members (b) make a $28,125.00 penalty payment to the LWDA (75% of the $37,500 PAGA

13  allocation), and (c) pay the approved Settlement Administrator's Expenses, the Class

14  Representative's service payment, and Class Counsel's attorneys' fees and costs.  Sett. Agmt. §§

15  D.2-D.7.  The employer-side payroll taxes on the wage portion of the settlement will be paid

16  separately and in addition to the Total Settlement Amount.  *Id*. § D.10.

17      **1.    Settlement Allocation Formula**

18      The participating Class Members ("Class Participants") will be paid pursuant to an allocation

19  formula based on the subclass for each Class Member and the number of workweeks they worked

20  for Defendants during the Class Period.  Sett. Agmt. § D.6.[3]  Each Class Member's Individual

21  Settlement Payment will be calculated by dividing the Class Member's Individual Workweeks by

22  the Total Workweeks, and multiplying the resulting ratio by the Net Settlement Amount.  *Id*. §

23  D.6(a)-(b).  For tax purposes, the Individual Settlement Payments will be allocated as follows: 30%

24  as wages, 40% as interest and expense reimbursements, and 30% as penalties.  *Id*. § D.9.

25      **2.    No Reversion and No Claim Form Required**

26  _____

27  [2] All further references to the Settlement Agreement ("Sett. Agmt.") will cite to it directly.
[3] The parties executed a First Amendment to The Joint Stipulation of Class Action and PAGA

28  Settlement, which amended Section 6 of the Settlement Agreement re: Class Participant Distribution
Formula. (Ex. B.)[3]

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

This is a non-reversionary settlement.  Sett. Agmt. § D.7.  To make the relief provided by the Settlement as accessible to Class Members as possible, the Parties have agreed to eliminate the claims process.  *Id*. § C.6.  Each Class Member who does not submit a timely and valid opt-out request within 45 days after the Notice Packet is first mailed will be automatically mailed a check for his or her pro rata portion of the Settlement.  *Id*. § C.5.  Pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969 (2009), PAGA Employees cannot opt out of the PAGA portion of the Settlement.

### 3.    Distribution of Uncashed Settlement Checks

The Settlement Agreement provides that Class Members shall have one-hundred eighty (180) calendar days from the postmark date of the checks to deposit or otherwise cash their settlement checks.  Sett. Agmt. § D.7.  As to the funds that remain in the Settlement Fund Account after 180 days, due to Class Participants' failure to deposit or cash their settlement checks, those funds will be sent to the State of California's Unclaimed Property Fund in the Class Participants' names.  *Id*.

### 4.    Scope of the Release

Class Members who do not opt-out will release all claims arising from the same set of facts alleged in the FAC and the LWDA notifications, including claims for: failure to provide rest periods and meal periods; failure to pay minimum, regular, and overtime wages; failure to timely pay wages during employment and/or upon termination; unreimbursed business expenses; improperly itemized wage statements; unfair competition; and violations of the Private Attorneys General Act.  Sett. Agmt. § A, p. 5 & § D.11.  There is no 1542 release. The time period covered by the release is June 20, 2015 through December 31, 2021.  *Id*. § A, p. 6.

The PAGA Employees will release all claims for PAGA penalties that were alleged or could have been alleged by Plaintiff based on the facts alleged in the FAC and the LWDA notifications. *Id*. § A, p. 4 & § D.12. The PAGA release period is April 11, 2018 through December 31, 2021.  *Id*., pp. 4-5.

### C.    Attorneys' Fees and Costs and Proposed Service Payments

The Settlement Agreement allows Class Counsel to apply for an award of attorneys' fees of up to 30% of the Total Settlement Amount ($225,000) and litigation costs not to exceed $15,000.

Sett. Agmt. § D.4.  Plaintiff may apply to the Court for a service payment of up to $10,000 to compensate Plaintiff for her time and service to the class.  *Id*. § D.3. Plaintiff will file a Motion for Award of Class Representative Service Payments, Settlement Administrator's Expenses and Class Counsel's Attorneys' Fees and Costs to be heard at the same time as the Motion for Final Approval. If the Court awards less than the requested amounts, the difference will be added to the amount to be distributed to the Class Participants.  Sett. Agmt. § D.3.

### D.    Settlement Administration

As explained further in Section IV.B.7 below, the Settlement Agreement provides for Class Members to receive direct notice of the Settlement by mail. *Id*. § C.5. The notice administration plan will ensure that substantially all of the Class Members will receive notice of the Settlement and will be adequately apprised of and able to exercise their rights and options thereunder.  ILYM Group, Inc., an experienced third-party claims administrator, will handle all aspects of the notice process and settlement administration.  Righetti Decl. ¶ 24.  Class Counsel will also be available to the Class Members to answer their questions and encourage participation.

### IV.    ARGUMENT

### A.    The Settlement Class Should Be Provisionally Certified

During the preliminary approval analysis, the Court determines whether certification of a provisional settlement class is appropriate and whether the settlement is fair. *Carlin v. DairyAmerica, Inc.*, 328 F.R.D. 393, 398-399 (E.D. Cal. 2018) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). In *Amchem*, the Supreme Court specifically addressed the difference between litigation and settlement classes. The Court wrote, "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 557-558 (C.A.9 (Cal.), 2019) ["A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable. ("Courts ... regularly

certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.")"].

### 1.    The Settlement Class Is Sufficiently Numerous

The class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). This requirement is satisfied when there are as few as 40 class members. *Rannis v. Racchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010). Here, the settlement class includes approximately 98 employees. Righetti Decl. ¶ 25. Thus, the numerosity requirement is easily met.

### 2.    There Are Common Issues of Law and Fact

This requirement is construed permissively and is satisfied when there are shared legal issues with divergent factual predicates, or when there is a common core of facts coupled with disparate legal issues. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

Here, the common questions involve the legality of common policies and practices which apply to the entire class. This is sufficient to satisfy the commonality requirement for settlement purposes. *See Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) (granting final approval of a settlement involving allegations of off-the-clock work and failure to provide meal and rest breaks).

### 3.    Plaintiff's Claims Are Typical of the Settlement Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. Typicality refers to the nature of the claim or defense, not the specific facts from which it arose, and focuses on whether other class members "have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiff and the proposed class are composed of employees who worked from home and were subject to the same set of wage-and-hour policies and practices under the same working conditions (i.e., working from home and not being reimbursed for business related expenses). Both exempt and non-exempt Class Members were required to pay for business expenses while working

from home. Plaintiff's work experience was similar to that of the Class Members as they all worked under common policies and practices – and all experienced alleged violations in the same way.

### 4.    Adequately Representation

A representative plaintiff must be able to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  The adequacy inquiry involves two questions: (1) whether the named plaintiffs have conflicts of interest with the proposed class; and (2) whether the plaintiffs are represented by qualified and competent counsel.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff has no conflict of interest with the class members.  She performed the similar work and was subject to the same policies and practices as the Class Members.  Plaintiff's claims are identical to the claims of the other class members and arise from the same course of conduct by Defendants.  Plaintiff has embraced her responsibilities as the class representative by actively participating in this case, providing documents, identifying potential witnesses, providing valuable information regarding the policies and practices at issue in this case and Defendants' business structure, engaging in the settlement process, and consulting with counsel throughout the litigation. Righetti Decl. ¶¶ 26.  Plaintiff has devoted considerable time to this litigation and is prepared to continue to do so, demonstrating her commitment to achieving the best possible result for the class.[4] *Id.*  Further, Plaintiff is represented by qualified and competent counsel, who have the experience and resources necessary to vigorously pursue this action.  Righetti Decl. ¶¶ 1-5, 26; Nathan Decl. ¶¶ 9-12.  The firms representing Plaintiff have certified many class actions in state and federal court, for both litigation and settlement purposes, and have recovered many millions of dollars on behalf of class members.

### 5.    Common Issues Predominate Over Individualized Issues

Plaintiff is proceeding under Rule 23(b)(3), which requires a showing that common questions of law and fact predominate over individualized issues.  This inquiry tests whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson*

---

[4] Further details regarding Plaintiff's work on the case will be presented in a declaration with the motion for final approval.

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). An individual question is defined as "one where members of a proposed class will need to present evidence that varies from member to member." *Id.* A common question, on the other hand, is "one where the same evidence will suffice for each member to make prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.*

The central common question involves whether Defendants violated California law when, as alleged, they did not reimburse Plaintiff and Class Members for expenses paid by employees while performing from home. Resolution of the common question involves determining the legality of uniform practices and policies that applied to the entire Class.

### 6. A Class Action Is Superior to Individual Actions

Finally, a class action is a superior method for resolving the controversy. The superiority inquiry necessarily involves comparing a class action against alternative methods of dispute resolution. *Hanlon*, *supra*, 150 F.3d at 1023. The alternative here would be individual lawsuits by the Class Members. Because the individual amounts in controversy are relatively small, most class members would lack the resources and financial incentive to pursue individual claims. Furthermore, class treatment alleviates the heavy burden on the Court of adjudicating individual lawsuits. The Settlement also eliminates the risk of duplicative lawsuits and ensures that the Class Members' claims are resolved in an efficient and cost-effective manner.

### 7. The Court Should Appoint Plaintiff as the Class Representative and Plaintiff's Counsel as Class Counsel

The factors that apply in deciding whether to appoint class counsel are (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)( 1)(A).

As set forth herein, Plaintiff's counsel conducted a thorough investigation of the claims at issue before filing the complaint and during the three years and three months of litigation leading up to this settlement. Plaintiff's counsel has extensive experience litigating wage-and-hour class

actions and representative actions, is well-versed in the applicable law, and has ample resources to dedicate to the case. Righetti Decl. ¶¶ 1-5; Nathan Decl. ¶¶ 9-12.  The firms representing Plaintiff have vigorously represented the class members' interests and will continue to do so.

### B.        The Settlement Should Be Preliminarily Approved

A class action settlement requires court approval upon a finding that the settlement is fair, reasonable, and adequate.  FED. R. CIV. P. 23(e); *Hanlon*, 150 F.3d at 1026.  The fairness factors provide that a settlement should be preliminarily approved if it (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to the class representatives or segments of the class; and (4) falls within the range of possible approval.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-1080 (N.D. Cal. 2007).

The relative degree of importance of a particular factor depends on "the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  In applying these factors, the Court should also be guided by the "strong judicial policy' that favors the settlement of class actions."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Hanlon*, 150 F.3d at 1027 (a settlement is a "private consensual decision of the parties" and the approval analysis is limited to considering whether the settlement is a product of collusion and is fair as a whole).

### 1.        The Settlement Was Negotiated at Arm's Length by Experienced Counsel After Extensive Discovery

The Settlement is the product of a protracted mediation and arm's-length negotiation conducted with the assistance of an experienced mediator Jay C. Gandhi who is a retired federal magistrate. Class Counsel advocated vigorously on behalf of the Class throughout the negotiations in order to negotiate a settlement that is in the best interest of the Class Members and provides adequate class-wide relief.  Righetti Decl. ¶¶ 27.  The negotiations between the Parties resulted in a reasonable compromise that is the product of genuine give and take justified by the facts of this case.  The mediation took place after approximately two years of discovery, motion practice, and analysis and research of the issues likely to be raised at class certification and the merits stage of the

litigation.  Following the mediation, the parties spent several months negotiating the terms of the Joint Stipulation of Settlement.  Plaintiff is represented by experienced class action litigators, who believe that the Settlement is an excellent result for the Class Members.

Further, there are no "subtle signs of collusion."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  The settlement is non-reversionary.  The Settlement provides for an attorneys' fee award of up to 30% of the Total Settlement Amount; while this is higher than the Ninth Circuit benchmark of 25%, the Settlement is an outstanding result for the Class and thus an upward adjustment is warranted.  Similarly, the request for Plaintiff's enhancement award will be supported by evidence of the work she has done and the risk she has undertaken.

### 2.    The Settlement Provides Excellent Relief for the Class

The Settlement provides a significant monetary relief to the Class Members to compensate them for the alleged wage-and-hour violations at issue in this case.  Class Counsel estimates the Total Settlement Amount to represents more than 50% of Defendants' estimated realistic exposure, which is an excellent result. Righetti Decl. ¶¶ 28.

The proposed settlement provides a gross non-reversionary settlement amount of $750,000 to approximately 98 Class Members who worked a total of approximately 14,462 workweeks (3,374.5 months).  Out of the total 98 Class Members, 50 of these employees were classified as exempt and the remaining 48 were classified as non-exempt. The settlement provides the settlement class with an average payment of approximately $6,000.00 gross per class member in the exempt group and $9,375.00 gross per class member for the non-exempt group before deductions for fees, litigation costs and costs of administration.

With respect to the failure to reimburse business expenses claim (applicable to the entire Class), the 98 employees worked a total of 3,374.5 months (14,462 workweeks). $600,000.00 was allocated to the entire Class of 98 individuals for reimbursement of expenses.  This equates to a payment of approximately $177.80 per month ($600,000.00/3,374.50) for every month worked by each Class Member. Home office expense estimates range from $235-$300 (MPA 2:21-23), so the Class Members recovery is between approximately 60-75% for their reimbursement of expenses claim.

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Regarding the claims for failure to receive all wages owed, rest breaks and related relief, (applicable only to the non-exempt sub-class) the non-exempt class worked a total of 1,212.85 months (5,191 workweeks). $150,000 was allocated to these claims equating to approximately $123.68 per month (or $28.90 per workweek). This is more than 2 hours of pay per month at the average hourly rate of $40 per hour.

In summary, the gross value is approximately $41.50 per workweek per class member for the exempt Class Member group and $70.40 per class member for the non-exempt Class Member group. The net value to each class member in the exempt group is approximately $3,068.74 and the net value to each class member in the non-exempt group is approximately $6,321.61. The net value of the settlement per workweek for the exempt class members is estimated to be approximately $16.55 ($300,000 - $146,562.52 ÷ 9271 workweeks) while the net value of the settlement per workweek per non-exempt class members is estimated to be approximately $58.45 ($450,000 - $146,562.52 ÷ 5191).

Further, 5% of the Total Settlement Amount ($37,500) was allocated to the PAGA claim. Sett. Agmt. § D.5. As required by statute, 75% ($28,125) will be paid to the LWDA. The remaining 25% ($9,375) will be distributed to approximately 98 PAGA Employees. Thus, the PAGA payments are estimated to be approximately $95.68 per Class Member on average ($9,375 ÷ 98). Nathan Decl. ¶3-8.

This represents an excellent recovery for the Class Members, particularly considering the risks of further litigation and the fact that Defendant modified its wage and hour practices as of March 2020. As noted above, there is no guarantee that Plaintiff could certify the off the clock and rest break claim or prevail on the merits. Proof of non-compliance would involve a comparison of employee time records against data showing when they logged into and out of the computer system to determine how much unpaid time may have occurred during the process of clocking in and out. There is a likelihood that the amounts of time would be relatively small. Allegations that employees were required or pressured to work off the clock to complete their work would, based on the evidence adduced during discovery, be difficult to prove on a class wide basis. With regard to the

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

rest breaks, the written policies appeared to be compliant, which would make certification significantly more challenging.

Moreover, litigating the case through certification, summary judgment, and trial would have been expensive and time-consuming, with the risk that Plaintiff could lose at each step of the way and recover nothing, barring a successful appeal.  For these reasons, the settlement value is fair, reasonable, and adequate.

### 3.    The Settlement Is Non-Reversionary and Checks Will Be Mailed Automatically

The method for distributing relief to the Class Members is simple and effective.  The Class Members have been identified from Defendants' employment records and will be mailed automatic payments unless they opt out.  The PAGA Employees cannot opt out, as provided by law, but will also be mailed automatic payments.  No part of the settlement will revert to Defendants.

### 4.    There Is No Unfair Preferential Treatment of Class Members

The Settlement does not give preferential treatment to any Class Members. All Class Members – whether classified as exempt or non-exempt -- who have reimbursement claims under California Labor Code Section 2802 are receiving the same amount per work week to settle the California Labor Code Section 2802 claims. Class Members classified as non-exempt have additional claims of off-the-clock work and rest breaks that are not claims applicable to Exempt Class Members nor are the Exempt employees being asked to release them. Non-Exempt Class Members receive additional compensation per workweek (to resolve these off-the-clock work and rest breaks claims). The additional compensation equates to another $28.90 per workweek Sett. Agmt. § D.6.  The settlement provides for the funds to be allocated to each participating Class Member proportionally based on the number of weeks they worked for Defendants, as shown by Defendants' records.  Sett. Agmt. § D.6.  The settlement class is cohesive because it consists of exempt and non-exempt employee with at-home arrangements.

Further, the proposed incentive award to Plaintiff is within the range approved by courts in this district.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-267 (N.D. Cal. 2015) (noting that incentive awards compensate wage-and-hour plaintiffs for a "significant reputational risk" and

higher awards are appropriate when the average class member payment is high); *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645 at *5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 each to two plaintiffs in a $1,725,000 settlement). The requested award also accounts for the risk that Plaintiff took on by filing this lawsuit while continuing to work for Defendants.

### 5. The Proposed Attorneys' Fee Award is Preliminarily Appropriate

Pursuant to the Settlement Agreement, Plaintiff's counsel will seek attorneys' fees not to exceed $225,000 (30% of the Total Settlement Amount) and actual litigation costs not to exceed $15,000. Sett. Agmt. § D.4. To date, Plaintiff's counsel billed approximately 308.9 in attorney hours and 28.6 in paralegal hours on this case. Additional hours will be required to see the case through final approval and will be detailed in Plaintiff's motion for final approval. Currently, Plaintiff's counsel's lodestar is $274,140.00, which represents a negative multiplier. The costs incurred to date amount to $7,493.75 This includes the cost of having an expert prepare a damages analysis for mediation. Approval of fees is not being requested at this time. More specific information regarding Plaintiff's counsel's lodestar will be provided via a fee motion to be heard at the same time as final approval.

The motion for attorneys' will be filed by the ninth day after the Notice Packet is mailed to ensure that Class Members have 35 days to review the motion (the opt-out period is 45 days). The awarded fees and costs will be paid after the settlement has been finally approved and the deadline to file appeals has passed, assuming that no appeals are filed. To the extent the Court awards less than the requested amount of fees and costs, the difference will be distributed *pro rata* to the Class Members. Sett. Agmt. § D.4.

### 6. The Release Is Narrowly Tailored

As set forth above in Section III.B.4, the release is tailored to track the definition of the settlement class and the PAGA group. The Class Members will release all claims arising from the same set of facts alleged in the operative FAC and in Plaintiff's LWDA letters. Sett. Agmt. § A, p. 5 & § D.11. The release period for class claims is from June 20, 2015 (four years prior to the date of filing of the complaint) through December 31, 2021. *Id.* § A, p. 6. The PAGA Employees will only release PAGA claims that were alleged or could have been alleged by Plaintiff based on the

facts alleged in the FAC or in Plaintiff's LWDA letters. *Id.* § A, p. 4. The PAGA release period is April 11, 2018 (one year before the date of Plaintiff's first PAGA letter) through December 31, 2021. *Id.*, p. 4.

### 7.    The Proposed Class Notice, Notice Plan, and Settlement Administrator Are Sufficient

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement." FED. R. CIV. P. 23(e)(1)(B). The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). The notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962-963 (9th Cir. 2009) (quotations omitted). Reasonable efforts must be made to reach all class members, but it is not required that each class member actually receive notice. FED. R. CIV. P. 23(c)(2)(B) (requiring "individual notice to all members who can be identified through reasonable effort"); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (under Rule 23, the standard is "best practicable" notice, not "actually received" notice). The notice is easy for the Class Members to understand and includes class counsel's contact information; the address for the settlement administrator's website with links to the settlement motions and other important documents; and information about how to access the case docket and when the final approval hearing will be held. The notice also includes information about how to opt out. FED. R. CIV. P. 23(c)(2)(B).

The Class Members and PAGA Employees have already been identified from Defendants' records and the Notice Packet will be mailed to them using the last known mailing address in Defendants' records. Sett. Agmt. § C.5. Prior to mailing, the Settlement Administrator will perform a search in the National Change of Address database to update the addresses. *Id.* If a notice is returned with a forwarding address, it will be re-mailed to the new address. *Id.* If a notice is returned without a forwarding address, the Settlement Administrator will perform a skip trace search and will re-mail the notice if a new address is found. *Id.* There will be a 45-day period to opt out of and

object to the settlement, and this deadline will be extended by 10 calendar days for those individuals whose notice is re-mailed.  *Id*.

The Notice Packet describes the nature of the action; the definition of the settlement class; the total settlement amount and the proposed deductions for the payment to the LWDA, class representative service award, attorneys' fees and costs, and settlement administration costs; the scope of the release; the formula for calculating individual settlement payments and PAGA payments and how to challenge the number of workweeks and pay periods used to calculate the payments; how to participate in, object to, and opt out of the Settlement, and the deadlines for doing so; that Class Members may enter an appearance through an attorney if desired; the binding effect of the judgment on Class Members and PAGA Employees; information about when and where the final approval hearing will be held, and how to check if the hearing date has changed; and how to obtain further information about the lawsuit and the Settlement.  Righetti Decl., Ex. C.  The Notice Packet also includes Class Counsel's contact information and the address for the settlement administration website.  *Id*.  The notice will be sent in English only.  The parties are informed and believe that the Class Members and PAGA Employees in this case are proficient in English, so that a translation is not necessary.

In order to request exclusion from the Settlement, Class Members only need to fill out the Opt-Out form included in the Notice Packet.  Righetti Decl., Ex. D.  This form includes a brief statement that the signer is a Class Member, wishes to be excluded from the Settlement, and understands that he or she will receive no money from the Settlement by opting out.  The Class Member will sign and date the form and fill in their mailing address and telephone number so they can be properly identified.  *Id*.  No other information is required. The Notice Packet also states that Class Members and PAGA Employees may file an objection with the Court, and includes instructions and the deadline for doing so.  Righetti Decl., Ex. C.  Written objections must state the ground for the objection, and Class Members and PAGA Employees will also be permitted to make oral objections if they appear at the final approval hearing.  Sett. Agmt. § C.5.  The motion for attorneys' fees will be filed 35 days before the opt-out and objection deadline.

The CAFA notice requirements apply to this case. Defendants, through the claims

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

administrator, will provide the required notice within 10 days after this motion is filed and Plaintiff will file a declaration with details about the CAFA notice in support of the motion for final approval. Also, the requisite notice under the PAGA will be provided to the LWDA.

**V.    PROPOSED IMPLEMENTATION SCHEDULE**

Plaintiff proposes the following implementation schedule for further proceedings:

| | | |
|---|---|---|
| a. | Deadline for Defendants to Submit Class List and Data to Settlement Administrator | **Twenty-one (21) calendar days after the Preliminary Approval Order** |
| b. | Deadline for Settlement Administrator to Mail the Notice Packet to Class Members | **Fourteen (14) calendar days after Defendants provide the Settlement Administrator with the Class List and Data** |
| c. | Deadline for Settlement Administrator to Mail Reminder Post-Cards to Class Members | **Not more than thirty (30) calendar days (nor fewer than twenty-five (25) days) after mailing of Notice Packets to Class Members** |
| d. | Deadline for Class Members to Submit Opt-Out Forms or Objections to Settlement | **Forty-five (45) calendar days after mailing of Notice Packets to Class Members** |
| e. | Deadline for Class Counsel to file (1) Motion for Final Approval of Class Action Settlement and (2) Motion for Award of Class Representative Enhancement Award, Claims Administrator's Expenses and Attorneys' Fees and Costs | **_____, 2023** |
| f. | Hearing on:<br>• Motion for Final Approval of Class Action Settlement;<br>• Motion for Award of Class Representative Enhancement Award, Settlement Administrator's Expenses and Attorneys' Fees and Costs | **_____, 2023 at 10:00 a.m.** |

## VI.    CONCLUSION

The parties have successfully negotiated a settlement of claims that almost certainly would never have been brought, much less successfully so, but for the use of a class action as a procedural device.  The efficient and fair resolution of this case was made possible by the combined efforts of a dedicated and informed Class Representative and experienced Plaintiff's counsel and Defendants' counsel, who were able to realistically assess the costs and risks of continued protracted litigation. Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the proposed settlement, certify the Settlement Class, appoint Plaintiff as the Class Representative, appoint Plaintiff's counsel as Class Counsel, appoint the Settlement Administrator, and approve the Notice Packet and proposed implementation schedule.  A proposed order has been submitted for the Court's consideration.

Dated: December 1, 2022                    Respectfully Submitted,

**RIGHETTI GLUGOSKI, P.C.**

_____

Matthew Righetti

-19-

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**