UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE FOON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CENTENE MANAGEMENT COMPANY, LLC, et al.,<br><br>　　　　　Defendants. | No. 2:19-cv-01420 AC<br><br><br>ORDER |

Plaintiff Michelle Foon brings this putative class action against defendants Centene Management Company, LLC, Centene Corporation, Cenpatico Behavioral Health LLC, Envolve Holdings, Inc., and Nebraska Total Care, Inc., alleging class violations of the Labor Code including failure to provide rest breaks, failure to reimburse, failure to furnish accurate itemized wage statement, and violations of the Business and Profession Code § 17200. ECF No. 25 (First Amended Complaint) at 16-26. On the consent of all parties, this case was reassigned to the Magistrate Judge for all purposes. ECF No. 50. On December 1, 2022, plaintiff moved for preliminary approval of class action settlement, noting that the motion is unopposed. ECF No. 52. The matter was taken under submission for a decision on the papers. ECF No. 54. For the reasons discussed below, the court GRANTS plaintiff's motion for preliminary approval of class action settlement on the terms provided at the conclusion of this order.

# I. BACKGROUND

## A. Factual and Procedural Background

Plaintiff Michele Foon ("Foon") brought this putative wage-and-hour and Private Attorney General ("PAGA") class action against defendants Centene Management Company LLC ("Centene Management"), Centene Corporation, Cenpatico Behavioral Health, LLC ("Cenpatico"), Envolve Holdings, Inc. (formerly CenCorp Health Solutions, Inc. ("CenCorp")), Nebraska Total Care, Inc. ("Nebraska Total Care") and Does 1-10, inclusive as referred to herein, for compensatory and statutory damages, penalties, injunctive relief, costs, interest, and attorneys' fees resulting from the defendants' unlawful conduct. ECF No. 25 at 1.

On or about July 17, 2014, Foon became employed with Cenpatico in Texas. Plaintiff's position was classified as exempt at the time she was first employed by Cenpatico. Plaintiff received a series of promotions until she became Utilization Manager (Specialty Therapy & Rehabilitative Services) while working in Texas. Id. at 4. Plaintiff's employment with Cenpatico was terminated and she was then hired by Envolve. Id. Her employment with Envolve was then terminated and she was rehired by Nebraska Total Care. Cenpatico, Envolve, and Nebraska Total Care are separate and distinct legal entities. Id. Plaintiff alleges that though these are separate legal entities, it is clear based on the control exerted over these wholly owned subsidiaries that there is a unity of interest between Centene and Cenpatico, Envolve, and Nebraska Total Care such that they are all controlled and operated by Centene. Id. In or about January 2019, Plaintiff moved locations to Lodi, California as a remote employee of Nebraska Total Care.

The operative First Amended Complaint ("FAC") alleges that, for both exempt and non-exempt employees who were expected to work from home, defendants failed to reimburse business expense; also, for non-exempt employees the FAC alleges that Defendants failed to pay all wages earned, provide compliant meal and rest breaks and timely pay wages. ECF No. 25 at 5-7; Righetti Decl. ¶ 8. The Labor Code Section 2802 allegation, applicable to the entire class, claims that both exempt and non-exempt employees were not reimbursed for the costs of using their own personal telephones, computers, office space and utilities while working remotely for Defendants. The home office expenses were approximately $235 to $300 per month. Righetti

Decl. ¶¶ 9.  The higher cost of $300 a month for home office expenses resulted from living in cities such as Los Angeles, Orange County, San Diego, and San Francisco.

Plaintiff alleges that several of defendants' actions and policies violated and continue to be in violation of the California Business and Professions Code section 17200, et seq. (predicate statutes, including Cal. Labor Code) and California Labor Code.  Plaintiff, on behalf of herself and Class Members, in addition to the claims set forth under California Business and Professions Code section 17200, et al. and the California Labor Code, brings a PAGA action and seeks penalties for violations of the California Labor Code section 2699, et seq., including without limitation sections 201, 202, 203, 204, 210, 218.5, 221-224, 226, 226.7, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1194, 1197, 1197.1, 1198, 2751, and 2698 et seq., applicable IWC California Wage Orders and California Code of Regulations, Title 8, section 11000, et seq.  ECF No. 25 at 2.

Plaintiff asserts class claims, including: (1)  Violation of Labor Code §§ 226.7 and 512 (Failure to Provide Rest Breaks) (2) Violation of Labor Code  §§ 2800, et seq.  (Reimbursement of Expenses) (42 U.S.C. § 1983); (3) Violation of Labor Code § 226 (Failure to Provide Accurate Itemized Wage Statements); (4) "Violation of Business and Professions Code §§ 17200 et seq. (Unfair Business Practices); (5) Violations of Labor Code §§ 2698 et seq. (Private Attorney General Act); (6) Violation of Labor Code §§ 1198.5 et seq. (Failure to Produce Records upon Request); (7) Violations of Labor Code §§ 201-203 et seq. (Unpaid Wages). Id.  Plaintiffs seek monetary damages. Id. at 27-28.  The California Class includes California employees (non-exempt and exempt) who worked from home between June 20, 2015 to July 12, 2021.  Due to the shorter one-year statute of limitations on PAGA, the PAGA group includes California employees (non-exempt and exempt) who worked from home between April 18, 2018 and July 15, 2021.  Stipulated Settlement, pp. 1:19-22 and 4:23-27.  The release extends to December 31, 2021. ECF No. 52 at 8.

In November of 2020, defendants notified plaintiff of another pending wage and hour class action in the Northern District of California, Del Toro v. Centene Corporation, et al., Case No. 4:19-cv-05163-YGR. ECF No. 52 at 3.  Counsel in this case agreed to cooperate with Del

Toro counsel in joint prosecution of the cases. The parties engaged in substantial early discovery efforts and on May 21, 2021, the Foon and Del Toro parties participated in a full-day mediation, at which they reached a tentative settlement. ECF No. 52 at 10.

On December 1, 2022, the plaintiff submitted a notice of a tentative class action settlement asking the court to issue an order (1) granting preliminary approval of the proposed Joint Stipulation of Class Action Settlement; (2) appointing Plaintiff as the Class Representative; (3) appointing Plaintiff's counsel as Class Counsel; (4) appointing ILYM Group, Inc. as the Settlement Administrator; (5) approving the form of notice to the Class and Notice Procedures; and (6) setting the hearing date for a Motion for Final Approval. ECF No. 52 at 2. The motion is now before the court.

        B.        Proposed Settlement Agreement

The Settlement Class to be conditionally certified consists of 98 California-based employees employed between June 20, 2015 and July 15, 2021 ("Class Period"), sub-classed as follows: (1) 48 non-exempt remote employees who worked from home; and (2) 50 exempt remote employees who worked from home (the "Class Members"). Righetti Decl. ¶ 22, Ex. A (Settlement Agreement § D.1). The PAGA Period is from April 18, 2018 to July 15, 2021.

The Total Settlement Amount is $750,000.00, which will be used to (a) compensate Class Members; (b) make a $28,125.00 penalty payment to the LWDA (75% of the $37,500 PAGA allocation); and (c) pay the approved Settlement Administrator's Expenses, the Class Representative's service payment, and Class Counsel's attorneys' fees and costs. Sett. Agmt. §§ D.2-D.7. The employer-side payroll taxes on the wage portion of the settlement will be paid separately and in addition to the Total Settlement Amount. Id. § D.10.

The participating Class Members ("Class Participants") will be paid pursuant to an allocation formula based on the subclass for each Class Member and the number of workweeks they worked for Defendants during the Class Period. Sett. Agmt. § D.6.3. Each Class Member's Individual Settlement Payment will be calculated by dividing the Class Member's Individual Workweeks by the Total Workweeks, and multiplying the resulting ratio by the Net Settlement Amount. Id. § D.6(a)-(b). For tax purposes, the Individual Settlement Payments will be allocated

as follows: 30% as wages, 40% as interest and expense reimbursements, and 30% as penalties. Id. § D.9.  The proposed Settlement provides an average payment of approximately $6,000.00 per class member for the exempt sub-class group (50 individuals) and $9,375.00 per class member for the non-exempt sub-class group (48 individuals).  The Settlement will also provide a payment of $28,125.00 to the California Labor and Workforce Development Agency (i.e., 75% of the amount allocated to resolve the PAGA allegations).  Defendants have also brought their practices into compliance with California law as of March 2020.

This is a non-reversionary settlement. Sett. Agmt. § D.7.  To make the relief provided by the Settlement as accessible to Class Members as possible, the parties have agreed to eliminate the claims process.  Id. § C.6.  Each Class Member who does not submit a timely and valid opt-out request within 45 days after the Notice Packet is first mailed will be automatically mailed a check for his or her pro rata portion of the Settlement.  Id. § C.5.  Pursuant to Arias v. Superior Court, 46 Cal. 4th 969 (2009), PAGA Employees cannot opt out of the PAGA portion of the Settlement.  If approved, the Settlement will fully resolve the lawsuit.

## II.     LEGAL STANDARDS

### A.     Preliminary Class Certification and Approval of Settlement under Rule 23

#### 1.     Preliminary Class Certification

Rule 23 of the Federal Rules of Civil Procedure does not expressly provide for preliminary class certification; however, district courts often certify settlement classes on a preliminary basis for settlement purposes while deferring final class certification until the court holds a final fairness hearing. See, e.g., Aguilar v. Wawona Frozen Foods, No. 1:15-CV-00093 DAD EPG, 2017 WL 117789, at *7 n.9 (E.D. Cal. Jan. 11, 2017) (citations omitted).  When it reviews class certification, the court owes "undiluted, even heightened, attention" to certification requirements in the settlement context.  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997); Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003), overruled on other grounds by Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010); see Berry v. Baca, No. CV 01-02069 DDP, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005) (the parties cannot merely "agree to certify a class that clearly leaves any one requirement unfulfilled").  Preliminary certification is

1 appropriate only if each Rule 23(a) certification prerequisite is satisfied. Rule 23 requires that the
2 class contain enough members; the suit involves questions common to all class members;
3 plaintiff's claims are typical of the class members; and plaintiff and his counsel fairly and
4 adequately protect the class interests. Fed. R. Civ. P. 23(a)(1)-(4). If Rule 23(a)'s threshold
5 requirements are met, the proposed class must satisfy Rule 23(b)(3)'s predominance and
6 superiority requirements. Fed. R. Civ. P. 23(b)(3); see Amchem, 521 U.S. at 615.

### 2. Preliminary Settlement Approval

Rule 23 requires that "[t]he claims, issues, or defenses of a certified class ... may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Courts have long recognized that settlement class actions present unique due process concerns for absent class members." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotation marks omitted). When approval of a settlement agreement negotiated prior to formal class certification is at issue, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id. Thus, the reviewing court analyzes such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than ordinarily required under the Federal Rules. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998), overruled on other grounds by Wal-Mart Stores, 564 U.S. at 338; see also Bluetooth, 654 F.3d at 946. "Judicial review must be exacting and thorough." Manual for Complex Litigation (Fourth) § 21.61 (2004).

There is a "strong judicial policy" favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, to protect due process rights of absent class members, Rule 23(e) allows claims of a certified class to be "settled ... only with the courts approval" and "only after a hearing and only on a finding [that the agreement is] fair, reasonable, and adequate ...." Fed. R. Civ. P. 23(e). To evaluate whether a proposed class action settlement is fair, reasonable and adequate, courts consider several factors, as relevant, including: (1) [T]he strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 944 (9th Cir. 2015) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)); In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (noting that, at preliminary approval stage, courts consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval . . .") (citations omitted).

These factors substantively track those effected through 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

The Rule 23(e)(2) factors took effect on December 1, 2018 and, as an advisory note to the Rule 23(e) amendment recognizes, "each circuit has developed its own vocabulary for expressing […] concerns" regarding whether a proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2) advisory committee's note. The codified factors are not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id. Indeed, the

Advisory Committee warned against allowing "[t]he sheer number of factors [to] distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note. Thus, the court draws on the Ninth Circuit's longstanding guidance and the Rule 23(e)(2) factors as relevant to resolve this motion.

### III.   DISCUSSION

A. Preliminary Certification of the Class Under Rule 23

At the preliminary stage, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Advisory Committee 2003 Note on Fed. R. Civ. P. 23(c)(1). Here, the parties have provided clear explanations of how each factor is met, as discussed below. The court is satisfied that preliminary certification is appropriate.

1. Rule 23(a)(1) – Numerosity

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no set numerical cutoff used to determine whether a class is sufficiently numerous; courts must examine the specific facts of each case to evaluate whether the requirement has been satisfied. See General Tel. Co. v. EEOC, 446 U.S. 318, 329-30 (1980). Plaintiffs "need not state the exact number of potential members nor identify all the members of the class so long as the putative class is not amorphous." Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 448 (N.D. Cal. 1994) (internal quotation omitted). "As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988).

In this case, numerosity is satisfied because the class seeking conditional certification consists of 98 individuals. Righetti Decl. ¶ 22, Ex. A (Settlement Agreement § D.1).

2. Rule 23(a)(2) – Commonality

The commonality element requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Not all questions of fact and law must be common to satisfy the rule. Hanlon, 150 F.3d at 1019. Only "a single common question" is required. Dukes, 564 U.S.

8

at 359.  But the "claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350.

The central common question here is whether defendants violated California law when, as alleged, they did not reimburse plaintiff and Class Members for expenses paid by employees while performing from home. Resolution of the common question involves determining the legality of practices and policies that applied uniformly to the entire Class.  The putative class here thus meets the commonality requirement of Rule 23 for purposes of preliminary approval.

### 3. Rule 23(a)(3) – Typicality

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  Under this "permissive" requirement, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Hanlon, 150 F.3d at 1020).

For the same reasons demonstrating that commonality exists, the requirement of typicality is met.  Plaintiff and the proposed class are composed of employees who worked from home and were subject to the same set of wage-and-hour policies and practices under the same working conditions (i.e., working from home and not being reimbursed for business related expenses). Both exempt and non-exempt Class Members were required to pay for business expenses while working from home.  Plaintiff's work experience was like that of the Class Members as they all worked under common policies and practices – and all experienced alleged violations in the same way.

////

|   |   |
|---|---|
| 1 | 4. <u>Rule 23(a)(4) – Adequacy</u> |

The adequacy requirement is satisfied only if the representative plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts must consider whether "(1) [ ] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [ ] the named plaintiff and their counsel [will] prosecute the action vigorously on behalf of the class[.]" <u>Hanlon</u>, 150 F.3d at 1020. "Serious conflicts of interest can impair adequate representation by the named plaintiffs, yet leave absent class members bound to the final judgment, thereby violating due process." <u>In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, & Prod. Liab. Litig.</u>, 895 F.3d 597, 607 (9th Cir. 2018).

Here there are no indications that the representative plaintiff has any conflicts of interest with the class members. Plaintiff has put forth considerable time and effort in actively participating in this case. Righetti Decl. ¶¶ 26. Plaintiff's interests appear to be aligned with those of the class; nothing in the record currently before the court suggests otherwise.

5. <u>Rule 23(b) – Superiority</u>

The court must also be satisfied "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." <u>Hanlon</u>, 150 F.3d at 1023 (citation omitted).

Here, as noted above, individual resolution of each class member's dispute would require 98 or more separate lawsuits. Righetti Decl. ¶ 22. The Settlement eliminates the risk of duplicative lawsuits and ensures that the Class Members' claims are resolved in an efficient and cost-effective manner. Class action is therefore the superior vehicle for resolving this dispute.

6. <u>Rule 23(b) – Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 521 U.S. at 623. While similar to Rule 23(a)'s commonality requirement, the predominance requirement is more demanding. <u>Id.</u> at

624; Dukes, 564 U.S. at 359. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022 (quoting Charles Alan Wright, et al., 7AA Federal Practice & Procedure § 1778 (2d ed. 1986)). But it is important to proceed with "caution when individual stakes are high and disparities among class members great." Amchem, 521 U.S. at 625.

Common issues predominate over individual issues in this case. Again, the central common question involves whether defendants violated California law when, as alleged, they did not reimburse plaintiff and Class Members for expenses paid by employees while performing from home. Resolution of the common question involves determining the legality of uniform practices and policies that applied to the entire Class. The class claims here are not the same as, or dependent upon, any individualized claim(s) that representative plaintiffs or class members might otherwise allege. The court finds that class-wide concerns predominate, and the class meets this requirement of Rule 23 at this stage.

### B. Terms of the Proposed Agreement

Considering the court's duty to absent class members, the undersigned will "review class action settlements just as carefully at the initial stage as [it] do[es] at the final stage." Cotter v. Lyft, Inc., 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016); see Smothers v. Northstar Alarm Servs., LLC, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *10 (E.D. Cal. Jan. 22, 2019).

Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); Bluetooth, 654 F.3d at 946. Although the court must weigh several factors to approve a settlement, additional factors may be relevant depending on the context of the case and the terms of the agreement. See Bluetooth, 654 F.3d at 946 ("The factors in a court's fairness assessment will naturally vary from case to case ....).

#### 1. Fairness and Adequacy of Terms

The proposed terms of settlement, outlined above, contain no obvious defects. Further, plaintiffs have sufficiently explained several potential impediments to full recovery in this case, and the prospects of plaintiffs' losing at trial or on appeal, with all attendant costs, indicate the

settlement recovery here is reasonable. ECF No. 52 at 19.

### 2. Fairness and Adequacy of Notice and Claim Forms

"Adequate notice is critical to court approval of a class settlement under [Fed. R. Civ. P.] 23(e)." Hanlon, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Village, LLC v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004) (internal cite & quotations omitted).

The parties have jointly prepared a Class Notice (Righetti Decl., Ex. C) that meets the standards of "the best notice practicable," pursuant to Fed. R. Civ. P. 23(c)(2)(B). The Class Notice adequately informs class members of the nature of the litigation, the essential terms of the settlement agreement, the fact that they do not need to submit a claim to get automatic payment, and information on what to do if they elect not to participate ("opt-out"), or object to the settlement. Id. at 1. Further, the Class Notice identifies class counsel, specifies the amounts of the class representative's incentive payment, class counsel attorneys' fees payment, and the settlement administrator's payment that plaintiff and class counsel will seek, and explains how to obtain additional information regarding the action and the settlement. Id. at 6.

Within twenty-one (21) days of preliminary approval of the Settlement Agreement by the court, defendants will provide the Settlement Administrator with the names, last known mailing address, last known telephone number if available, social security number, and the respective workweeks that each Class Member worked during the Class Period, and the number of pay periods worked by each PAGA Employee in the PAGA Period in a readable MS Excel spreadsheet (Collectively "Class List and Data"). ECF No. 52-1 (Joint Situation of Class Action and PAJA Settlement) at 24. Within fourteen (14) calendar days of receiving the Class List and Data, the Settlement Administrator will mail the Notice Packet to the Class Members and PAGA Employees via first class regular U.S. mail. Id. Prior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database information to update and correct any known identifiable address changes. Id. These procedures provide the best possible notice to the class members.

3.       Arm's Length Settlement Negotiations

The court also considers whether the parties reached their settlement agreement through arm's length negotiations. Fed. R. Civ. P. 23(e)(2)(B); In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080 (considering whether "proposed settlement appears to be the product of serious, informed, non-collusive negotiations"). In this case, the parties inform the court that, following initial discovery involving production of over 1,800 documents, the parties participated in a full-day mediation led by a mediator very knowledgeable and experienced in wage-and-hour class actions, and they were ultimately successful in producing the instant settlement agreement. ECF No. 52 at 9-11. This requirement is thus satisfied.

4.       Adequate Representation

Whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal treats class members equitably relative to each other" also factor into the court's assessment of whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2)(A), (D). Thus, a proposed agreement should "not improperly grant preferential treatment to class representatives or segments of the class . . . ." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080. Plaintiff, as the sole class representative in this case, will request a payment of up to $10,000 in recognition of their efforts in obtaining the benefits of the settlement for the Settlement Class, and in acting as the representative plaintiff in this action. ECF No. 52 at 13.

An excessive class representative service award may be an indication that the named class member is not adequately representing the interests of the class. Flores v. ADT LLC, No. 1:16-CV-00029 AWI JLT, 2018 WL 6981043, at *1 (E.D. Cal. Mar. 19, 2018) (citing Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1164 (9th Cir. 2013)). The court ultimately will grant an incentive award only upon receiving "evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs.'" Flores, 2018 WL 6981043, at *1 (quoting Reyes v. CVS Pharmacy, Inc., No. 1:14-CV-00964-MJS, 2016 WL 3549260, *15 (E.D. Cal. June 29, 2016)); In re Online, 779 F.3d at 947 (court considers

"proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment"). Specifically, this court and others have adopted the following factors to determine whether to approve an enhancement payment: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995); see also Zakskorn v. Am. Honda Motor Co., Inc., 2:11-CV-02610 KJM, 2015 WL 3622990, at *17 (E.D. Cal. June 9, 2015).

This court has found requests of $2,500 per representative, in cases involving three representatives, to be presumptively reasonable. See Zakskorn, 2015 WL 3622990, at *17. In cases in which the class representative requested an enhancement payment of $10,000, this court has required evidence of substantial effort throughout a protracted case. See, e.g., Smothers v. NorthStar Alarm Services, LLC, No. 2:17-CV-00548 KJM KJN, 2020 WL 1532058, at *12 (E.D. Cal. Mar. 31, 2020) (awarding a $10,000 enhancement payment to each representative plaintiff when they submitted declarations describing their 100 hours of work each). "Whether to authorize an incentive payment to a class representative is a matter within the court's discretion." Id. at 11. "[C]ourts may consider the following factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation" Id. (citing Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

An incentive award of $10,000 for the representative plaintiff is a substantial request. The plaintiff has not submitted information regarding the effort expended, assumed risk, personal difficulties, or personal benefits assumed. ECF No. 52 at 21. While this does not preclude preliminary approval, and the undersigned does not mean to suggest that the amount is excessive in this case as the court will review the reasonableness of the incentive award amount at the final

fairness hearing, the representative plaintiff is strongly encouraged to submit a declaration substantiating the hours and level of work they have each put into this case. Further, at the final approval stage, plaintiffs should include an analysis of the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litig., 779 F.3d at 947.

### 5. Attorneys' Fees

The court also considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "The Ninth Circuit has approved two methods of assigning attorney's fees in common fund cases: the 'percentage of the fund' method and the 'lodestar' method." Ontiveros v. Zamora, 303 F.R.D. 356, 372 (E.D. Cal. 2014). The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees, and "courts may adjust this figure upwards or downwards if the record shows special circumstances justifying a departure." Id. (internal quotation marks omitted) (citing In re Bluetooth, 654 F.3d at 942). The Ninth Circuit has also approved the use of lodestar cross-checks to determine the reasonableness of a particular percentage recovery of a common fund. Seguin v. City of Tulare, No. 1:16-CV-01262 DAD SAB, 2018 WL 1919823, at *6 (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002)).

Here, the proposed settlement includes an attorneys' fee and expense award not to exceed $225,000.00, representing not more than thirty percent (30%) of the total settlement amount. ECF No. 52 at 21. The actual litigation costs will not exceed $15,000.00. To date, plaintiff's counsel asserts it has billed approximately 308.9 in attorney hours and 28.6 in paralegal hours on this case, and that additional hours will be required to see the case through final approval and will be detailed in plaintiff's motion for final approval. Currently, counsel represents its lodestar is $274,140.00, which represents a negative multiplier. Id. The costs incurred to date amount to $7,493.75, including the costs of having and expert prepare a damages analysis for mediation. Id. A motion for attorneys' fees will be filed by the ninth day after the Notice Packet is mailed to

1  ensure Class Members have 35 days to review the motion.  To the extent the Court awards less
2  than the requested amount of fees and costs, the difference will be distributed pro rata to the Class
3  Members.  Id.

4        6.    Notice

5  "The court must direct notice in a reasonable manner to all class members who would be
6  bound by the propos[ed] [settlement]...." Fed. R. Civ. P. 23(e)(1)(B).  Under Rule 23's provision
7  for notifying class members of class certification, the notice must state in plain, easily understood
8  language:

9        (i) the nature of the action;

10       (ii) the definition of the class certified;

11       (iii) the class claims, issues, or defenses;

12       (iv) that a class member may enter an appearance through an attorney
13       if the member so desires;

14       (v) that the court will exclude from the class any member who requests exclusion;

15       (vi) the time and manner for requesting exclusion; and

16       (vii) the binding effect of a class judgment on members under Rule
17       23(c)(3).

18 Fed. R. Civ. P. 23(c)(2)(B)(i).  Furthermore, "due process requires at a minimum that an absent
19 plaintiff be provided with an opportunity to remove himself from the class by executing and
20 returning an 'opt out' or 'request for exclusion' form to the court." Phillips Petroleum Co. v.
21 Shutts, 472 U.S. 797, 812 (1985).  "In a Rule 23(b)(3) class, the notice and any Internet Web site
22 should include opt-out forms." Ann. Manual Complex Lit. § 21.312 (4th ed.).  "[D]ue process
23 requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself
24 from the class by executing and returning an 'opt out' or 'request for exclusion' form to the
25 court." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).
26     Here, the proposed notice of settlement includes the necessary background information
27 about the nature of the action, the class itself, as well as the process that led to the proposed
28 settlement.  Rhighetti Decl., Ex. C, Notice.  The notice explicitly mentions that a class member

1 may enter objections through an attorney if the class member so desires. Id. at 5. The notice
2 identifies and lists the contact information for plaintiff's counsel and counsel for defendants and
3 states class members can contact plaintiff's counsel if they have questions about the settlement.
4 Id. at 6. The notice then discusses how a class member may opt out of the settlement. Id. at 5.

Plaintiffs have included an opt-out from; there is no claim form as Class Members are not required to file a form to receive payment. Rhighetti Decl., Ex. D, Opt-Out Form. The notice correctly informs class members when counsel and plaintiff will file their respective motions for attorneys' fees and costs and an incentive award, and where and how class members may review those documents. Rhighetti Decl., Ex. C at 6. Importantly, the class members may contact class counsel for more information or to review the relevant documents. Id. The proposed notice is reasonable in all respects.

### IV.     CONCLUSION

For the foregoing reasons, the court HEREBY MAKES THE FOLLOWING DETERMINATIONS AND ORDERS:

1. The court finds, on a preliminary basis, that the Settlement Agreement incorporated in full by this reference and made a part of this order granting preliminary approval: (1) is the product of informed and non-collusive negotiations; (2) has no obvious deficiencies; (3) falls within the range of possible approval; and (4) the Class Notice (Righetti Decl. Ex. C) is, in all respects, fair, reasonable, adequate, and in compliance with all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the California and United States Constitutions.

2. The court also finds that, on a preliminary basis, the Settlement is fair, just, adequate, and reasonable to all members of the Class when balanced against the probable outcome of further litigation relating to class action certification, liability and damages issues, and potential appeals of rulings. Good cause appearing, the motion for preliminary approval of class action settlement is GRANTED.

3. As part of preliminary approval, the court finds for settlement purposes only, that the class meets the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and conditionally certifies the class for the purposes of settlement as: "all California-based

1  employees of Defendants employed from June 20, 2015 through July 16, 2021 ("Class Period")
2  as follows: (1) all non-exempt remote employees who had work-from-home arrangements that
3  started prior to March 20, 2020; and (2) all exempt remote employees who had work-from-home
4  arrangements that started prior to March 2020.  ECF No. 52-1 at 28.

5　　　　4.  The court approves and appoints plaintiff as the Representative Plaintiff of the Class
6  for settlement purposes only, subject to Final Approval.  Any Settlement Class Member who does
7  not elect to be excluded from the Settlement by submitting a Request to be Excluded by the
8  Objection/Exclusion Deadline may, but need not, enter an appearance in this Action through his
9  or her own attorney.  Settlement Class Members who do not enter an appearance through their
10 own attorneys will be represented by Class Counsel.

11　　　　5.  The court approves and appoints plaintiff's counsel as Class Counsel for settlement
12 purposes only, subject to Final Approval.

13　　　　6.  The court finds the proposed class notice and the proposed method of dissemination
14 reasonably and adequately advises the class of the information required by Federal Rule of Civil
15 Procedure 23(c)(2)(B).

16　　　　7.  The court finds the mailing to the class members' present or last known address
17 constitutes an effective method of notifying class members of their rights with respect to the
18 proposed settlement.  Accordingly, it is hereby ORDERED that:

19　　　　a.  Not later than 35 days from the date of this order, the settlement administrator shall
20 mail the Notice Packets to each class member, by first class United States mail, postage pre-paid.
21 The exterior of the mailing envelope shall include the following language below the
22 administrator's address:

23　　　　　　Important Legal Document:
24　　　　　　You may get Money from a Class Action Settlement; your prompt
25　　　　　　reply to correct a bad address is required

26　　　　8.  IT IS FURTHER ORDERED that:
27　　　　a.  Requests for Exclusion: Requests for exclusion from the settlement must be mailed
28 counsel at any address provided for in the class notice, postmarked no later than 45 days from the

1    initial mailing of the Notice Packets to the class.  If the notice response deadline falls on a

2    Saturday or federal holiday, it will be extended to the next day when the U.S. Postal Service is

3    open.

4              b. Objections:  Any Settlement Class Member who did not elect to be excluded from the

5    Settlement by submitting a Request to be Excluded by the Objection/Exclusion Deadline may, but

6    need not, submit objections to the proposed Settlement by filing and serving an Objection to the

7    Settlement by the Objection/Exclusion Deadline: no later than 45 days from the initial mailing of

8    the Notice Packets to the Class.  Notices of objection to the settlement may be mailed to counsel

9    at any address shown in the class notice, by first class U.S. mail on or before the notice response

10   deadline.  Any written notice of objection should be signed by the class member and/or his or her

11   representative; including the objecting class member's name, address, telephone number, the case

12   name and number as shown in the class notice, the basis for each objection, and whether or not

13   the class member intends to appear at the final approval hearing.  Class members may also appear

14   at the time of the final approval hearing to make any objections they may have.

15         9.  IT IS FURTHER ORDERED that all Settlement Class Members who do not seek to be

16   excluded from the Settlement by submitting a Request for Exclusion by the Objection/Exclusion

17   Deadline are enjoined from proceeding against the Settling Defendants, including their present or

18   former elective and/or appointive boards, agents, servants, employees, consultants, departments,

19   commissioners, attorneys, officials and officers, and all other individuals and entities, whether

20   named or unnamed in the Action, as to the claims asserted in the Action in the event the final

21   settlement is approved.

22         10.  IT IS FURTHER ORDERED that within fourteen days of the notice response

23   deadline, class counsel shall file their application for awards of reasonable attorneys' fees and

24   litigation expenses and class representative service payments.

25         11.  IT IS FURTHER ORDERED that counsel shall submit a Motion for Order Granting

26   Final Approval of the Class Action Settlement with a noticed hearing date in accordance with the

27   Local Rules of this Court and the Standing Orders of Magistrate Judge Allison Claire, located on

28   the court's website.  The hearing shall be set to occur not sooner than **80 days** from the date of

filing the motion.  All papers in support of the Motion for Order Granting Final Approval of the Class Action Settlement shall be filed at least twenty-eight calendar days before the final fairness/final approval hearing.

12. The final approval hearing shall be held before the undersigned at a date to be noticed in the motion for final approval.

13. IT IS FURTHER ORDERED that if, for any reason, the court does not execute and file an order granting final approval and judgment, or if the effective date, as defined by the settlement agreement, does not occur for any reason whatsoever, the settlement agreement and the proposed settlement subject of this order and all evidence and proceedings had in connection therewith, shall be null and void and without prejudice to the status quo ante rights of the parties to this litigation as more specifically set forth in the settlement agreement.

14. IT IS FURTHER ORDERED that pending further order of this court, all proceedings in this matter except those contemplated by this order and in the settlement agreement are STAYED.

15. The court expressly reserves the right to adjourn or to continue the final approval hearing from time-to-time without further notice to class members, except that a notice of continuance shall be provided to all class members who submit a notice of objection.  In the event the settlement does not become final for any reason, this preliminary approval order shall be of no further force or effect and the fact that the parties were willing to stipulate to class certification as part of the settlement shall have no bearing on, and not be admissible in connection with, the issue of whether a class should be certified in a non-settlement conference.

The motion for preliminary approval (ECF No. 52) is GRANTED.

IT IS SO ORDERED.

DATED: February 1, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE