Matthew Righetti, Esq. (SBN. 121012)
matt@righettilaw.com
**RIGHETTI GLUGOSKI, P.C.**
220 Halleck Street, Suite 220
San Francisco, CA 94129
Telephone: (415) 983-0900

Reuben D. Nathan, Esq. (SBN. 208436)
rnathan@nathanlawpractice.com
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Highway, Suite 200
Newport Beach, California 92663
Tel: (949) 270-2798
Fax: (949) 209-0303

Attorneys for Plaintiff MICHELE FOON

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE FOON, on behalf of herself and other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CENTENE MANAGEMENT COMPANY, LLC, CENTENE CORPORATION, CENPATICO BEHAVIORAL HEALTH, LLC, ENVOLVE HOLDINGS, INC., and DOES 1 to 10, inclusive,<br><br>Defendants. | **Case Number: 2:19-cv-01420-AC**<br><br>Magistrate Judge Allison Claire<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUHTORITIES IN SUPPORT THEREOF**<br><br>**Hearing Date:**    **July 26, 2023**<br>**Time:**    **10:00 a.m.**<br>**Location:**    **Courtroom 26, 8th Floor**<br><br>[Filed concurrently with the Declaration of Nathalie Hernandez of ILYM Group; and Proposed Order]<br><br>[Complaint filed: June 20, 2019] |

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 26, 2023 at 10:00 a.m. in Courtroom 26 – 8th floor of the above-captioned court located at Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Plaintiff MICHELE FOON will, and hereby does, move for an order:

      1.    Finding that the notice provided to the Class met the requirements of due process and constituted the best notice practicable; and

      2.    Granting final approval of the proposed class action settlement on the grounds that the settlement is fair, reasonable and adequate and in the best interest of the Class.

This motion is made on the grounds that the settlement is fair, reasonable, and adequate because:

- it is the product of arm's-length, good-faith negotiations after significant litigation;
- the relative strengths and weaknesses of the claims and defenses, compared to the amount offered in settlement, are consistent settlement value – particularly considering the risk, expense, complexity and likely duration of further litigation;
- both the considerable amount of discovery completed and the stage of the proceedings supports resolution at this time;
- the experience and views of counsel, the class representative and the reaction of class members, all support that the proposed settlement should receive final approval, which will bring finality to this litigation.

This motion will be based upon: this Notice; the accompanying Memorandum of Points and Authorities; the declaration of Nathalie Hernandez of ILYM Group, Inc. filed with this motion; the Memorandum of Points and Authorities in support of Plaintiff's Motion for Attorneys' Fees (Dkt. 56), including the previously submitted Declarations of Matthew Righetti, Reuben Nathan, Ronald H. Bae, and Michele Foon filed in support of Plaintiff's Motion for Attorneys' Fees (Dkts. 56-1, 56-2, 56-3, and 56-4); the pleadings and papers on file herein; and upon any other matters that may be presented to the Court at the hearing.

1    Dated: May 4, 2023                    Respectfully Submitted,

2

3                                          **RIGHETTI GLUGOSKI, P.C.**
                                           **NATHAN & ASSOCIATES, APC**
4

5                                          By:   _____

6                                                Matthew Righetti
                                                 Class Counsel
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................ 1

III.  SUMMARY OF SETTLEMENT TERMS.............................................................. 1

    A.    The Proposed Settlement Class................................................................. 1

    B.    Relief Provided by the Settlement Agreement.......................................... 2

        1.    Settlement Allocation Formula ..................................................... 2

        2.    No Reversion and No Claim Form Required.................................. 2

        3.    Distribution of Uncashed Settlement Checks ............................... 2

        4.    Scope of the Release ..................................................................... 3

    C.    Requested Attorneys' Fees and Costs and Proposed Service Payment to the
        Class Representative ................................................................................. 3

    D.    Settlement Claims Administrator.............................................................. 3

IV.   CLAIMS ADMINISTRATION............................................................................. 4

V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND
    THUS WARRANTS FINAL APPROVAL.............................................................. 7

    A.    Legal Standards Governing Final Approval .............................................. 7

    B.    The Settlement Was Negotiated at Arm's Length by Experienced Counsel After
        Extensive Discovery ................................................................................. 7

    C.    The Settlement Provides Excellent Relief for the Class ........................... 8

    D.    The Settlement is Non-Revisionary and Checks Will Be Mailed
        Automatically............................................................................................ 9

    E.    There is No Unfair Preferential Treatment of Class Members ........................... 10

    F.    The Proposed Attorneys' Fee Award is Appropriate.......................................... 10

    G.    The Release Is Narrowly Tailored ................................................................... 10

VI.   FINAL CLASS CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT
    PURPOSES IS APPROPRIATE ......................................................................... 12

    A.    The Settlement Class Is Sufficiently Numerous ................................................. 12

    B.    There Are Common Issues of Law and Fact ....................................................... 13

    C.    Plaintiff's Claims Are Typical of the Settlement Class...................................... 13

    D.    Plaintiff and Her Counsel Adequately Represent the Settlement Class ............. 14

    E.    Certification Is Proper Under Rule 23(b)(3)...................................................... 15

1.     Common Questions Predominate ............................................................. 15

2.     A Class Action Is Superior to Many Individual Actions ........................ 15

VII.    CONCLUSION.............................................................................................. 16

# **TABLE OF AUTHORITIES**

**Cases**                                                                **Page**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................ 16

*Arias v. Superior Court,*
  46 Cal. 4th 969 (2009) ...................................................................... 2

*Bellinghausen v. Tractor Supply Co.,*
  306 F.R.D. 245 (N.D. Cal. 2015) ...................................................... 10

*Chu v. Wells Fargo Invs., LLC,*
  2011 WL 672645 at *5 (N.D. Cal. Feb. 16, 2011) ............................ 10

*Churchill Vill., LLC v. Gen. Elec. Co.,*
  361 F.3d 566 (9th Cir. 2004) ............................................................ 4

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) .......................................................... 7

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ............................................................... 13

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ......................................................................... 4

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ......................................................................... 13

*Gonzalez v. CoreCivic of Tenn., Inc.,*
  2018 WL 4388425 at *12 (E.D. Cal. Sept. 13, 2018) ....................... 11

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .............................................. 7, 12, 13, 15

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ............................................................ 13

*Hendricks v. StarKist Co.,*
  2015 WL 4498083 at *7 (N.D. Cal. July 23, 2015) .......................... 10

*Hesse v. Sprint Corp.,*

598 F.3d 581 (9th Cir. 2010) ................................................................................. 11

*Hubbard v. RCM Techs. (USA), Inc.*,

2021 WL 5016058 at *7, *17 (N.D. Cal. Oct. 28, 2021) ........................................ 12

*Hyundai & Kia Fuel Econ. Litig.*,

926 F.3d 539 (9th Cir. 2019) (en banc) ............................................................ 12, 16

*In re Bluetooth Headset Prods. Liab. Litig.*,

654 F.3d 935 (9th Cir. 2011) .................................................................................... 8

*In re Online DVD-Rental Antitrust Litig.*,

779 F.3d 934 (9th Cir. 2015) .................................................................................. 14

*In re Zynga Inc. Secs. Litig.*,

2015 WL 6471171 at *12 (N.D. Cal. Oct. 27, 2015) ............................................. 10

*Jordan v. Cnty. of L.A.*,

669 F.2d 1311 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983) ........... 12

*Leyva v. Medline Indus., Inc.*,

716 F.3d 510 (9th Cir. 2013) .................................................................................. 15

*M. Berenson Co. v. Faneuil Hall Marketplace*,

671 F. Supp. 776 (D. Mass. 1987) ............................................................................ 8

*Officers for Just. v. Civ. Serv. Comm'n*,

688 F.2d 615 (9th Cir. 1982) .................................................................................... 7

*Otey v. Crowdflower, Inc.*,

2014 WL 1477630 at *7 (N.D. Cal. Apr. 15, 2014) ............................................... 11

*Rannis v. Racchia*,

380 Fed. Appx. 646 (9th Cir. 2010) ....................................................................... 12

*Staton v. Boeing, Co.*,

327 F.3d 938 (9th Cir. 2003) ............................................................................ 13, 14

*Stonehocker v. Kindred Healthcare Operating LLC*,

2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ....................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*,

577 U.S. 442 (2016) (quotations omitted) ............................................................. 15

*Valentino v. Carter- Wallace, Inc.*,

    97 F.3d 1227 (9th Cir. 1996)....................................................................16

*Williams v. Boeing Co.*,

    517 F.3d 1120 (9th Cir. 2008)...................................................................11

*Wolin v. Jaguar Land Rover N. Am., LLC*,

    617 F.3d 1168 (9th Cir. 2010)...................................................................13

*Wonderly v. Youngblood*,

    2022 WL 378262 at *9 (E.D. Cal. Feb. 8, 2022) ......................................12

*Yokoyama v. Midland Nat'l Life Ins. Co.*,

    594 F.3d 1087 (9th Cir. 2010)...................................................................15

**Statutes**

FED. R. CIV. P. 23(a)(1) ....................................................................................12

FED. R. CIV. P. 23(a)(4) ....................................................................................14

FED. R. CIV. P. 23(c)(2)(B)..................................................................................4

FED. R. CIV. P. 23(e)(1)(B)..................................................................................4

Rule 23(a) .........................................................................................................12

Rule 23(a)(1) .....................................................................................................12

Rule 23(b) .........................................................................................................12

Rule 23(b)(3).............................................................................................4, 12, 15

## <u>OTHER AUTHORITIES</u>

Conte & Newberg, *Newberg on Class Actions* § 11.41 (4th ed., 2002) .......................................7

Conte & Newberg, *Newberg on Class Actions* § 3:12 (5th ed., 2011).......................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On October 7, 2022, this Court granted preliminary approval of the Joint Stipulation of Class Action Settlement ("Settlement Agreement" or "Settlement") and approved a notice plan to be completed by the court appointed neutral third-party administrator, ILYM. The settlement notice process has been completed, and Plaintiff now moves this Court for final approval of the proposed class action settlement.

With the assistance and cooperation of the parties, ILYM has completed the notice process as ordered by the Court. The notice packet was delivered to 100% of the Class Members. None of the Class Members opted out, and there are no objections to the Settlement.  Hernandez Decl. ¶ 11. The Class Members' unanimous approval of the Settlement reflects a consensus from the class that the Settlement is fair, adequate and reasonable.  The average estimated settlement payment is $4,566.33, and the highest estimated payment is $12,248.75. Hernandez Decl. ¶ 13.

For the reasons set forth herein and in Plaintiff's Motion for Attorneys' Fees (Dkt. 56), Plaintiff respectfully requests that this Court grant final approval of the proposed settlement.

### II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural history of this case are set forth both in Plaintiff's Motion for Attorneys' Fees (Dkt. 56 at 1:27 – 5:20) and the declaration of Matthew Righetti in support of Preliminary Approval (Dkt. 52-1 at 5:6 – 28).  Pursuant to the Northern District's Procedural Guidelines for Class Action Settlements, the facts and procedural history set forth in the Motion for Attorneys' Fees is incorporated herein by reference.

### III.   SUMMARY OF SETTLEMENT TERMS

#### A.   The Proposed Settlement Class

The Settlement Class is defined as 98 California-based employees of Defendants employed from June 20, 2015 through July 15, 2021 ("Class Period"), sub-classed as follows: (1) 48 non-exempt remote employees who worked from home; and (2) 50 exempt remote employees

1  who worked from home (the "Class Members"). Righetti Decl. ISO Preliminary Approval ¶ 22,

2  Ex. A (Settlement Agreement § D.1).[1] The PAGA Period is from April 18, 2018 to July 15, 2021.

3  **B.   Relief Provided by the Settlement Agreement**

4          The Total Settlement Amount is $750,000.00, which will be used to: compensate Class

5  Members; make a $28,125.00 payment to the LWDA (75% of the $37,500 PAGA allocation) and

6  a $9,375.00 payment to PAGA aggrieved employees (25% of the 37,500); and pay the Settlement

7  Administrator's Expenses, the Class Representative's service payment, and Class Counsel's

8  attorneys' fees and costs.  Sett. Agmt. §§ D.2-D.7.  The employer-side payroll taxes on the wage

9  portion of the settlement will be paid by Defendant separately and in addition to the Total

10  Settlement Amount.  *Id*. § D.9.

11          **1.   Settlement Allocation Formula**

12          The participating Class Members ("Class Participants") will be paid pursuant to an

13  allocation formula based on the number of workweeks they worked for Defendants during the

14  Class Period.  Sett. Agmt. § D.6.  Each Class Member's Individual Settlement Payment will be

15  calculated by dividing the Class Member's Individual Workweeks by the Total Workweeks, and

16  multiplying the resulting ratio by the Net Settlement Amount.  *Id*. § D.6(a)-(b).  For tax purposes,

17  the Individual Settlement Payments will be allocated as follows: 30% as wages, 40% as interest

18  and expense reimbursements, and 30% as penalties.  *Id.* § D.9.

19          **2.   No Reversion and No Claim Form Required**

20          This is a non-reversionary settlement.  Sett. Agmt. § D.7.  To make the relief provided by

21  the Settlement as accessible to Class Members as possible, the Parties have agreed to eliminate

22  the claims process.  *Id*. § C.6.  Each Class Member who does not submit a timely and valid opt-

23  out request within 45 days after the Notice Packet is first mailed will be automatically mailed a

24  check for his or her pro rata portion of the Settlement.  *Id*. § C.5.  Pursuant to *Arias v. Superior*

25  *Court*, 46 Cal. 4th 969 (2009), PAGA Employees cannot opt out of the PAGA portion of the

26  Settlement.

27          **3.   Distribution of Uncashed Settlement Checks**

---

[1] All further references to the Settlement Agreement ("Sett. Agmt.") will cite to it directly.

1   The Settlement Agreement provides that Class Members shall have one-hundred eighty

2   (180) calendar days from the postmark date of the checks to deposit or otherwise cash their

3   settlement checks.  Sett. Agmt. § D.7.  As to the funds that remain in the Settlement Fund Account

4   after 180 days, due to Class Participants' failure to deposit or cash their settlement checks, those

5   funds will be sent to the State of California's Unclaimed Property Fund in the Class Participants'

6   names.  *Id.*

7   **4.      Scope of the Release**

8   Class Members who do not opt-out will release all claims arising from the same

9   set of facts alleged in the FAC and the LWDA notifications, including claims for: failure to

10  provide rest periods and meal periods; failure to pay minimum, regular, and overtime wages;

11  failure to timely pay wages during employment and/or upon termination; unreimbursed business

12  expenses; improperly itemized wage statements; unfair competition; and violations of the Private

13  Attorneys General Act.  Sett. Agmt. § A, p. 5 & § D.11. There is no 1542 release. The time period

14  covered by the release is June 20, 2015 through December 31, 2021.  *Id.* § A, p. 6.

15  The PAGA Employees will release all claims for PAGA penalties that were alleged or

16  could have been alleged by Plaintiff based on the facts alleged in the FAC and the LWDA

17  notifications.  *Id.* § A, p. 4 & § D.12.  The PAGA release period is April 11, 2018 through

18  December 31, 2021.  *Id.*, pp. 4-5.

19  **C.      Requested Attorneys' Fees and Costs and Proposed Service Payment to the**

20          **Class Representative**

21  As set forth in Plaintiff's Motion for Attorneys' Fees, Plaintiff is seeking $225,000 in

22  attorneys' fees, $8,357.09 in litigation costs, $15,000 in settlement administration costs, and a

23  $10,000 service payment (Dkt. 56 at 1:3-6). These amounts are justified based for the reasons set

24  forth in the Motion for Attorneys' Fees.

25  **D.      Settlement Claims Administrator**

26  This Court approved the retention of ILYM Group, Inc., an experienced and competent

27  class action settlement administrator, as the Settlement Claims Administrator (Dkt. 55). ILYM

28  has fulfilled the duties expected of it to date and as ordered by the Court.  Hernandez Decl., ¶¶ 3-

29  14.  The Claims Administrator's fees will be paid from the Maximum Settlement Amount. Sett.

Agmt. § D.7.  The amount requested by ILYM includes completion of all administration tasks to conclusion including a final report for the Court.

## IV.    CLAIMS ADMINISTRATION

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement."  FED. R. CIV. P. 23(e)(1)(B).  The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.  *Churchill Vill., LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Notice mailed to each Class Member "who can be identified through reasonable effort" constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  For any class certified under Rule 23(b)(3), the notice must inform Class Members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded."  FED. R. CIV. P. 23(c)(2)(B).

The form and the manner of dissemination of the notice packet sent to the Class Members were consistent with modern best practices set forth by the Federal Judicial Center, negotiated and agreed upon by all counsel and approved the Court in the Order Granting Preliminary Approval. Dkt. 55. The Notice informed Class Members of the following, among other things:

1.   The nature of this action, the identity of Class Counsel, and the essential terms of the Settlement;
2.   The allocation of the Settlement fund, including the formula for calculation of settlement shares and the amount of each Class Member's individual share (assuming all Class Members participate), the requests for the Class Representative service payments and the Class Counsel attorneys' fees and costs payment, and the other payments that will be deducted from the Settlement fund;
3.   How to participate in the Settlement;
4.   How to opt out of the Settlement;
5.   How to object to the Settlement;
6.   This Court's procedures for final approval of the Settlement; and
7.   How to obtain additional information regarding this action and the Settlement.

Hernandez Decl., ¶ 7, **Ex. A**.

1
2
3
4
5

The Notice was written in plain English and was organized and formatted so as to be as clear as possible.  The Notice both encouraged Class Members to contact the Settlement Administrator with any questions, and provided Class Counsel's and the Settlement Administrator's telephone, mail, email, and web contact information.  Thus, the notice standard is satisfied.

6
7
8
9
10

Plaintiff's counsel and Defendants' counsel worked together to draft the proposed Notice so that it fairly and neutrally apprised the Class Members of their rights and remedies in this action.  The parties' proposal to provide notice of the settlement to Class Members entailed mailing the Class Notice, Claim Form and Opt-Out Form to all known and reasonably ascertainable Class Members as follows.

11
12
13
14
15

On February 20, 2023, the Settlement Administrator received the class data from Defendants.  Hernandez Decl. ¶ 5.  The class list included 98 individuals.  *Id.*  A National Change of Address database search was performed on each address before the notice packets were mailed.  *Id.* ¶ 6.  On March 8, 2023, the Settlement Administrator mailed the Notice Packet to the Class Members via first-class regular U.S. mail.  *Id.* ¶ 7.  A total of 4 notice packets were returned as undeliverable, and 4 were re-mailed to an updated address.  *Id.* at ¶¶ 8-9.

16
17
18
19
20
21
22
23
24
25
26
27

The Notice Packet described the nature of the action; the definition of the settlement class; the total settlement amount and the proposed deductions for the payment to the LWDA, class representative service award, attorneys' fees and costs, and settlement administration costs; the scope of the release; the formula for calculating individual settlement payments and PAGA payments and how to challenge the number of workweeks and pay periods used to calculate the payments; how to participate in, object to, and opt out of the Settlement, and the deadlines for doing so; that Class Members may enter an appearance through an attorney if desired; the binding effect of the judgment on Class Members and PAGA Employees; information about when and where the final approval hearing would be held, how to check if the hearing date changes; and how to obtain further information about the lawsuit and the Settlement. Sett. Agmt., Ex. 1. There was a 45-day period to both opt out of and object to the settlement, and this deadline was extended by 10 calendar days for those individuals whose notice was re-mailed.  The Notice Packet also

28

included Class Counsel's contact information and the address for the settlement administration website.  *Id.*  The notice was sent in English and Spanish.  Hernandez Decl. ¶ 7, **Ex. A**.

In order to request exclusion from the Settlement, Class Members only needed to fill out the Opt-Out form included in the Notice Packet.  Hernandez Decl. ¶ 7, **Ex. A** (p. 9).  This form included a brief statement that the signer is a Class Member, wishes to be excluded from the Settlement, and understands that he or she will receive no money from the Settlement by opting out.  The Class Member signed and dated the form and filled in their mailing address and telephone number so they could be properly identified.  *Id.*  No other information was required.

The Notice Packet also stated that Class Members and PAGA Employees may file an objection with the Court, and included instructions and the deadline for doing so.  Hernandez Decl. ¶ 7, **Ex. A**.  Written objections must have stated the ground for the objection, and Class Members and PAGA Employees were also permitted to make oral objections if they appeared at the final approval hearing.  Sett. Agmt. § C.5.  Per the Northern District's Procedural Guidance for Class Action Settlements, the motion for attorneys' fees was filed 35 days before the opt-out and objection deadline.

The CAFA notice requirements applied to this case.  CAFA notices were sent to the U.S. Attorney General in California and the Offices of the Attorney Generals of the following states: Arizona, New York, Virginia, Washington, Florida, Oregon, Minnesota, Ohio, and Texas.  The CAFA notices were mailed by Littler Mendelson, P.C. on December 9, 2022.

The PAGA notice requirements applied to this case.  Plaintiff provided the LWDA with written notices on April 11, 2019 and June 4, 2019, Righetti Decl. Preliminary Approval ¶ 10.  Notice to the LWDA was submitted via online claim notice on April 11, 2019.  No response has been received from the LWDA – signaling the LWDA's consent to final approval.

The above-described notice procedure followed by the Settlement Administrator was preliminarily approved by this Court and was dutifully followed by the Settlement Administrator and the parties.  The result of the settlement administration is as follows:  Of the 98 Class Members, there were 98 Participating Claimants, which constitutes 100% of the Class. Hernandez Decl. ¶ 12.  The average award amount is $4,566.33.  *Id.* at ¶ 13.  The maximum award amount

is $12,248.75.  *Id*.  There were no requests for exclusion, and no Class Members objected to the settlement.  *Id*. at ¶¶ 10-11.

## V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND THUS WARRANTS FINAL APPROVAL

### A.     Legal Standards Governing Final Approval

"Federal Rule of Civil Procedure 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  This determination requires a balancing of several factors, such as: the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Id*.  A proposed class action settlement is presumed to be fair if the parties reached the settlement after arms' length negotiations, investigation and discovery were sufficient to allow counsel and the court to act intelligently, counsel is experienced in similar litigation, and the percentage of objector is small.  Conte & Newberg, *Newberg on Class Actions* § 11.41 (4th ed., 2002).

Finally, in evaluating class action settlements, the Court should also be guided by the "strong judicial policy' that favors the settlement of class actions."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The Ninth Circuit teaches that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits."  *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Hanlon*, 150 F.3d at 1027 (a settlement is a "private consensual decision of the parties" and the approval analysis is limited to considering whether the settlement is a product of collusion and is fair as a whole).

### B.     The Settlement Was Negotiated at Arm's Length by Experienced Counsel After Extensive Discovery

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 776, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair").

The Settlement is the product of protracted mediation and arm's-length negotiation conducted with the assistance of an experienced mediator Jay C. Gandhi who is a retired federal magistrate.  Class Counsel advocated vigorously on behalf of the Class throughout the negotiations in order to negotiate a settlement that is in the best interest of the Class Members and provides adequate class-wide relief. The vigorous negotiations between the Parties resulted in reasonable compromises on a host of issues. The resolution is the product of genuine give and take justified by the facts and realities of this case.  The mediation took place after approximately two years of discovery, motion practice, and analysis and research of the issues likely to be raised at class certification and the merits stage of the litigation.  Following the mediation, the parties spent several months negotiating the terms of the Memorandum of Understanding and the Joint Stipulation of Settlement.  Plaintiff is represented by highly experienced class action litigators who believe that the Settlement is an excellent result for the Class Members.

Further, there are no "subtle signs of collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  The settlement is non-reversionary.  The Settlement provides for an attorneys' fee award of up to 30% of the Total Settlement Amount, which, while higher than the Ninth Circuit benchmark of 25%, is warranted because the settlement represents an outstanding result for the Class; thus, a slight upward adjustment is warranted.  Dkt. 56 at 9:17 – 10:21.  Similarly, the request for Plaintiff's enhancement award is supported by evidence of the work, the enhanced release she agreed to and the risk she has undertaken. Foon Decl. in support of Mtn. for Atty. Fees (Dkt. 56-4, ¶¶ 2-22).

C.     **The Settlement Provides Excellent Relief for the Class**

The Settlement provides a significant monetary relief to the Class Members to compensate them for the alleged wage-and-hour violations at issue in this case.  Class Counsel estimates the Total Settlement Amount to represent more than 50% of Defendant's estimated realistic exposure,

which is an excellent result.  Righetti Decl. Preliminary Approval (Dkt. 52-1, ¶ 28).  The Class Members will receive automatic payments which are estimated to be $4,566.33 on average, and the highest payment will be approximately $12,248.75. Hernandez Decl. ¶ 13.  Further, 5% of the Total Settlement Amount ($37,500) was allocated to the PAGA claim.  Sett. Agmt. § D.5.  As required by statute, 75% ($28,125) will be paid to the LWDA.  The remaining 25% ($9,375) will be distributed to approximately 98 PAGA Employees.  Thus, the PAGA payments are estimated to be approximately $95.68 on average ($9,375 ÷ 98).

This represents an excellent recovery for the Class Members, particularly considering the risks of further litigation and the fact that Defendant modified its wage and hour practices as of March 2020.  As noted above, there is no guarantee that Plaintiff could certify the off the clock and rest break claim or prevail on the merits. Proof of non-compliance would involve a comparison of employee time records against data showing when they logged into and out of the computer system to determine how much unpaid time may have occurred during the process of clocking in and out.  There is a likelihood that the amounts of time would be relatively small. Allegations that employees were required or pressured to work off the clock to complete their work would, based on the evidence adduced during discovery, be difficult to prove on a class wide basis. With regard to the rest breaks, the written policies appeared to be compliant, which would make certification significantly more challenging.

Moreover, litigating the case through certification, summary judgment, and trial would have been expensive and time-consuming, with the risk that Plaintiff could lose at each step of the way and recover nothing, barring a successful appeal.  For these reasons, the settlement value is fair, reasonable, and adequate.

### D.     The Settlement Is Non-Reversionary and Checks Will Be Mailed Automatically

The method for distributing relief to the Class Members is simple and effective. The Class Members have been identified from Defendants' employment records and will be mailed automatic payments unless they opt out. The PAGA Employees cannot opt out, as provided by law, but will also be mailed automatic payments. No part of the settlement will revert to Defendants.

1

2

### E.      There Is No Unfair Preferential Treatment of Class Members

To the extent possible, a class action settlement "should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co.*, 2015 WL 4498083 at *7 (N.D. Cal. July 23, 2015). A distribution plan can be fair and reasonable if it awards a pro rata share to every participating class member. *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171 at *12 (N.D. Cal. Oct. 27, 2015). An allocation formula "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (citation omitted).

The Settlement does not give preferential treatment to any Class Members. The settlement provides for the funds to be allocated to each participating Class Member proportionally based on the number of weeks they worked for Defendants, as shown by Defendants' records. Sett. Agmt. § D.6. Within the notice each Class Member was provided the workweek numbers along with an opportunity to seek modification of those numbers. There were no issues that were submitted by Class Members.

As set forth in the Motion for Attorneys' Fees (Dkt. 56 at 15:9 – 16:16), the proposed incentive award to Plaintiff is within the range approved by courts in this district. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-267 (N.D. Cal. 2015) (noting that incentive awards compensate wage-and-hour plaintiffs for a "significant reputational risk" and higher awards are appropriate when the average class member payment is high); *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645 at *5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 each to two plaintiffs in a $1,725,000 settlement). The requested award also accounts for the risk that Plaintiff took on by filing this lawsuit.

### F.      The Proposed Attorneys' Fee Award is Appropriate

For the reasons set forth in Plaintiff's Motion for Attorneys' Fees, the requests for attorneys' fees in the amount of $225,000 (30% of the settlement amount), actual litigation costs of $8,357.09, and class representative service payment of $10,000 are appropriate and should be approved. Dkt. 56.

### G.      The Release Is Narrowly Tailored

1   As set forth above in Section III.B.4, the release is tailored to track the definition of the
2   settlement class and the PAGA group.  The Class Members will release all claims arising from
3   the same set of facts alleged in the operative SAC and in Plaintiff's LWDA letters.  Sett. Agmt.
4   § A, p. 5 & § D.11.  The release period for class claims is from June 20, 2015 (four years prior to
5   the date of filing of the complaint) through December 31, 2021.  *Id.* § A, p. 6.  The PAGA
6   Employees will only release PAGA claims that were alleged or could have been alleged by
7   Plaintiff based on the facts alleged in the SAC or in Plaintiff's LWDA letters.  *Id.* § A, p. 4.  The
8   PAGA release period is April 11, 2018 (one year before the date of Plaintiff's first PAGA letter)
9   through December 31, 2021.  *Id.*, p. 4.

10   In the Ninth Circuit, a settlement agreement may release claims "based on the identical
11   factual predicate as that underlying the claims in the settled class action."  *Hesse v. Sprint Corp.*,
12   598 F.3d 581, 590 (9th Cir. 2010) (citing *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir.
13   2008)).  The release in this case is limited to claims arising from the facts pled in Plaintiff's
14   operative complaint and PAGA letter.  Thus, the release is narrowly tailored and is not overbroad.

15   The release period is also appropriately tailored.  The Ninth Circuit's rules regarding the
16   scope of the release are designed to ensure that the class members do not release claims unrelated
17   to the settled case.  There is no strict limit on the release period, provided that the release tracks
18   the facts alleged in the case.  *See Hesse*, 598 F.3d at 590 (a settlement may properly bar a party
19   from bringing related claims in the future, "even though the claim was not presented and might
20   not have been presentable in the class action," provided that the claims are "based on the identical
21   factual predicate as that underlying the claims in the settled class action."); *Williams*, 517 F.3d at
22   1134 (a release is only enforceable when it "depend[s] upon the same set of facts" alleged in the
23   class action complaint); *Otey v. Crowdflower, Inc.*, 2014 WL 1477630 at *7 (N.D. Cal. Apr. 15,
24   2014) (refusing to approve a release that included "any and all wage-related claims" because it
25   went beyond the scope of the litigation).  The purpose of this requirement is to prevent the parties
26   from settling unrelated claims that the plaintiff did not allege, did not litigate, and did not believe
27   had any value.  *See Gonzalez v. CoreCivic of Tenn., Inc.*, 2018 WL 4388425 at *12 (E.D. Cal.
28   Sept. 13, 2018).  When the release is limited to claims arising out of the facts alleged in the case,
   courts routinely approve releases that extend through the date of preliminary or final approval.

*See, e.g.*, *Wonderly v. Youngblood*, 2022 WL 378262 at *9 (E.D. Cal. Feb. 8, 2022) (approving an FLSA release that covered the time period "between October 26, 2015, and Court approval"); *Hubbard v. RCM Techs. (USA), Inc.*, 2021 WL 5016058 at *7, *17 (N.D. Cal. Oct. 28, 2021) (granting final approval of a class action settlement release that "release does not include or cover any actions or omissions occurring after the Settlement Period," with the "Settlement Period" defined as "October 4, 2015 through the date of Preliminary Approval of Settlement.").

## VI.   FINAL CLASS CERTIFICATION OF RULE 23 CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court should provide final approval of the preliminarily-approved finding that the proposed settlement class is appropriate for settlement purposes.  The Court can certify a settlement class where the Court has determined that the proposed class and proposed class representative meet the four prerequisites of Rule 23(a) (namely numerosity, commonality, typicality and adequacy) and one of the three requirements of Rule 23(b).  *See Hanlon*, 150 F.3d at 1019.  Plaintiff seeks certification under Rule 23(b)(3), which requires that common questions of law or fact predominate over individual questions and that class treatment is a superior method of resolving the controversy.

The criteria for class certification "are applied differently in litigation classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-557 (9th Cir. 2019) (en banc).  In a litigation class, manageability is an important factor, but it plays no role in a settlement class because there will be no trial.  *Id*.  Similarly, the predominance requirement is "readily met."  *Id*. at 559.  However, the class definition receives heightened attention in a settlement class.  *Id*. at 557.  This requirement is designed to protect the interests of absentees by ensuring that the class definition is not unwarranted or overbroad.  *Id*.

### A.   The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  This requirement is satisfied when there are as few as 40 class members.  *Rannis v. Racchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010).  Here, the settlement class includes 98 employees.  Hernandez Decl., ¶¶ 5, 12.  Thus, the numerosity requirement is easily met.  *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd*

*on other grounds*, 713 F.2d 503 (9th Cir. 1983) (as few as 39 class members sufficient for numerosity); Conte & Newberg, *Newberg on Class Actions* § 3:12 (5th ed., 2011) ("a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

### B.      There Are Common Issues of Law and Fact

This requirement is construed permissively and is satisfied when there are shared legal issues with divergent factual predicates, or when there is a common core of facts coupled with disparate legal issues. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

Here, the common questions involve the legality of common policies and practices which apply to the entire class. This is sufficient to satisfy the commonality requirement for settlement purposes. *See Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) (granting final approval of a settlement involving allegations of off-the-clock work and failure to provide meal and rest breaks).

### C.      Plaintiff's Claims Are Typical of the Settlement Class

The Ninth Circuit explained that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton v. Boeing, Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).  It is sufficient that the class representative is "part of the class and possess[es] the same interest and suffer[s] the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).  This prong merely requires that the "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiff and the proposed class are composed of employees who worked from home and were subject to the same set of wage-and-hour policies and practices under the same working conditions (i.e., working from home and not being reimbursed for business related expenses). Both exempt and non-exempt Class Members were required to pay for business expenses while

working from home. Plaintiff's work experience was similar to that of the Class Members as they all worked under common policies and practices – and all experienced alleged violations in the same way.

### D.   Plaintiff and Her Counsel Adequately Represent the Settlement Class

A representative plaintiff must be able to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  Adequacy of representation is established where the plaintiff's interests are not antagonistic to those of the class and the plaintiff is represented by competent counsel. *Staton v. Boeing,* 327 F.3d at 957.  In other words, adequacy exists when the plaintiff and their counsel do not have any conflict of interest with the class members, and have prosecuted the action vigorously on behalf of the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

Plaintiff has no conflict of interest with the class members.  She performed the same work and was subject to the same policies and practices as the Class Members.  Plaintiff's claims are identical to the claims of the other class members and arise from the same course of conduct by Defendants.  Plaintiff has embraced her responsibilities as the class representative by actively participating in this case, providing documents, identifying potential witnesses, providing valuable information regarding the policies and practices at issue in this case and Defendants' business structure, engaging in the settlement process, and consulting with counsel throughout the litigation. Foon Decl. in support of Mtn. for Atty. Fees (Dkt. 56-4, ¶¶ 2-22); Righetti Decl. in support of Mtn. for Prelm. Appr. (Dkt. 52-1, ¶ 26).  Plaintiff has devoted considerable time to this litigation, demonstrating her commitment to achieving the best possible result for the class. Foon Decl. in support of Mtn. for Atty. Fees (Dkt. 56-4, ¶¶ 2-22).  Further, as the Court recognized in the preliminary approval order, Plaintiff is represented by qualified and competent counsel who have the experience and resources necessary to vigorously pursue this action.  Bae Decl. in support of Mtn. for Atty. Fees (Dkt. 56-3, ¶¶ 5-10); Nathan Decl. in support of Mtn. for Prelm. Appr. (Dkt. 52-2, ¶¶ 9-12); Righetti Decl. in support of Mtn. for Prelm. Appr. (Dkt. 52-1, ¶¶ 1-5, 26).  The firms representing Plaintiff have certified many class actions in state and federal court, for both litigation and settlement purposes, and have recovered many millions of dollars on behalf of class members.

### E.      Certification Is Proper Under Rule 23(b)(3)

#### 1.        Common Questions Predominate

Plaintiff seeks certification under Rule 23(b)(3), which requires a showing that common questions of law and fact predominate over individualized issues.  This inquiry tests whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted).  An individual question is defined as "one where members of a proposed class will need to present evidence that varies from member to member."  *Id*.  A common question, on the other hand, is "one where the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof."  *Id.*

The predominance requirement is satisfied for settlement purposes because Plaintiff challenges the legality of policies and practices that can be decided with common proof and will generate an answer common to the entire class. The central common question involves whether Defendants violated California law when, as alleged, they did not reimburse Plaintiff and Class Members for expenses paid by employees while performing from home.  Resolution of the common question involves determining the legality of uniform practices and policies that applied to the entire Class.

If the case were to be litigated, the common proof that would include, among other things, employee handbooks, standalone policy documents, performance reviews that reflect productivity rules, and Plaintiff's and the class members' time and payroll records, as well as documents reflecting when call center employees logged into and out of their phones.  The class members would have to individually prove their damages, but "damage calculations alone cannot defeat certification."  *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) ("damages determinations are individual in nearly all wage-and-hour class actions").

#### 2.        A Class Action Is Superior to Many Individual Actions

Rule 23(b)(3) "requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Hanlon*, 150 F.3d at 1023.  This requirement is met when "classwide litigation of common issues will reduce litigation costs and

promote greater efficiency" or when "no reasonable alternative exists."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (the predominance requirement was added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.").  Manageability is "not a concern in certifying a settlement class where, by definition, there will be no trial."  *In re Hyundai*, 926 F.3d at 556-57 (so stating and noting that the court instead must give heightened attention to the class definition).

In the instant case, the alternative method to a class action would be individual lawsuits by the 98 class members.  Because the individual amounts in controversy are relatively small, most class members would not have the resources or financial incentive to pursue an individual claim. *Levya v. Medline Indus. Inc.*, 716 F.3d at 515 (finding that "[i]n light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.").  Furthermore, class treatment alleviates the heavy burden on the Court of adjudicating individual lawsuits.  The Settlement also eliminates the risk of duplicative lawsuits and ensures that the class members' claims are resolved in an efficient and cost-effective manner.

Although Defendants disagree that the proposed class would satisfy the requirements for a litigated class action, Defendants do not object to certification of the class for purposes of this settlement.  Sett. Agmt. § C.3.

## VII.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiff's Motion for Attorneys' Fees, Plaintiff respectfully requests this Court to grant final approval of the proposed settlement.

Dated: May 4, 2023                              Respectfully Submitted,

                                                **RIGHETTI GLUGOSKI, P.C.**
                                                **NATHAN & ASSOCIATES, APC.**

                                                By:  _____
                                                     Matthew Righetti, Class Counsel